Obed M. OLSEN, d/b/a Spearfish KOA, and Annette Christensen and Bryce Christensen, d/b/a Chris' Campground, Plaintiffs and Appellants,

v.

CITY of SPEARFISH, a Municipal Corporation, Defendant and Respondent.

12527.

Supreme Court of South Dakota.

Argued April 18, 1979.

Decided Feb. 13, 1980.

Jon Mattson of Driscoll, Mattson, Rachetto & Christensen, Deadwood, for plaintiffs and appellants.

John J. Delaney of Amundson & Fuller, Lead, for defendant and respondent.

HENDERSON, Justice.

## ACTION

Appellants appeal from a judgment entered in favor of Respondent City of Spearfish, adjudging the city's proposed maintenance, renovation, and improvement of its campground facilities to be within the municipal powers granted under SDCL 9–38–1 as amended. We affirm in part and reverse in part.

## FACTS

Obed M. Olsen and Annette and Bryce Christensen (appellants) own and operate campgrounds located within a mile of Spearfish, South Dakota. Respondent City of Spearfish has operated a cabin and campground facility within its city park system for more than fifty years. At commencement of this suit, respondent's tourist and camping facilities consisted of (1) thirty-five cabins that had recently been sold, (2) three combination lavatories and bath structures, (3) fifty-seven trailer park sites complete with electrical, sewer, and water hookups, and (4) approximately one hundred additional campsites without hookups which have extension cords available to provide electrical service to portions of the camping area.

In 1977, respondent allocated funds to extensively modernize and improve its campground facilities. The proposed plan embraced the following changes: converting the space formerly occupied by the cabins to twenty-four new, complete hookup trailer sites; constructing a new, central shower house; installing electrical outlets for sixty-five to seventy-five campsites presently without hookups and now served by extension cords; and graveling or asphalting existing roads within the campground.

After respondent commenced construction of the shower house, appellants instituted this action to enjoin respondent from proceeding further with any aspect of the proposed campground renovation, and sought a determination on the legality of its actions under SDCL 9–38–1. An order was entered on November 28, 1977, which restrained and enjoined respondent during pendency of this action from any construction, expansion, improvement, or establishment of additional campground or tourist facilities, except that respondent was permitted to continue with construction of the shower house under way at that time. The matter was tried to the court, judgment was entered on June 15, 1978, which denied appellants injunctive and declaratory relief, and vacated all prior restraints imposed by the court on respondent's proposed plans.

Appellants concede that the City of Spearfish is authorized to operate and maintain its campground. They submit, however, that under the provisions of SDCL 9–38–1, as amended, respondent is only empowered to repair or, when necessitated, upgrade those camping facilities in existence on July 1, 1970. Appellants contend that those plans presently contemplated by respondent constitute the establishment of new facilities and an expansion of the campground's existing facilities which are impermissible under SDCL 9–38–1. Respondent, on the other hand, asserts that its proposals are within the purview of the statute. It contends that SDCL 9–38–1 was designed to prohibit the establishment of new campgrounds, and that it was not intended to prevent the establishment of new improvements to existing facilities.

## ISSUE

Whether SDCL 9–38–1 authorizes the expansion and improvement of municipal campgrounds established prior to July 1, 1970.

## DECISION

The issue raised involves one of statutory construction. SDCL 9–38–1 was amended

by SL 1970, ch. 63 § 1 and SL 1971, ch. 66, which now provides:

> Every municipality shall have the power to establish, improve, maintain, and regulate public parks, public squares, parkways, boulevards, swimming pools, camping and other facilities in connection therewith within or without the municipality, and to issue its bonds therefor, as provided by this title. No municipality having a population in excess of twelve hundred shall establish camping or tourist accommodation facilities after July 1, 1970; nor shall any municipality having a population of less than twelve hundred establish any campground if there is an existing campground, inspected and approved by the South Dakota department of health, located within twenty miles of such municipality; provided, further, that camping and tourist accommodation facilities established prior to July 1, 1970 are deemed to have been established under the then existing authority to establish public parks, and municipalities may continue to maintain and regulate such facilities.

■ The fundamental rule of statutory construction is that the intention of the legislature must be ascertained, if possible, and effect be given to such legislative intent. *Kuhrt v. Sully County Board of Education*, 85 S.D. 11, 176 N.W.2d 479 (1970); *Watertown Independent School Dist. No. 1 v. Thyen*, 83 S.D. 309, 159 N.W.2d 122 (1968). The 1970 amendments were enacted one month prior to this court's decision in *Behrens v. City of Spearfish*, 84 S.D. 615, 175 N.W.2d 52 (1970), which held that the City of Spearfish had the implied power to maintain and continue operating its tourist camp and cabins as an incident to its public park system. SDCL 9–38–1 initially passed the House under the following version: "Every municipality shall have the power to establish, improve, maintain, and regulate public parks, public squares, . . . *camping and tourist accommodation facilities* and other facilities in connection therewith within or without the municipality, and to issue bonds therefor, as provided by this title, H.B.No. 664 (underlined material indicates the amended portion of the statute). House Bill No. 664 passed the Senate with the following amendment: the words "and tourist accommodation facilities", previously adopted by the House, were deleted and a new sentence was inserted which prohibited the establishment of camping or tourist accommodations after the effective date of the Act, but allowed the continued maintenance and regulation of those facilities in existence at that time. It passed both Houses under the amended Senate version. In 1971, SDCL 9–38–1 was further amended to allow municipalities with populations under twelve hundred to establish campgrounds, provided there was not an approved campground within a twenty mile radius. However, the general prohibition against the establishment of camping or tourist accommodation facilities after July 1, 1970, remained in effect as to municipalities having a population in excess of twelve hundred.

In viewing the metamorphosis SDCL 9–38–1 underwent, it appears that the subsequent Senate amendments were offered in an attempt to curb that which under the House version would have been an unlimited power for the municipalities to establish camping and tourist accommodation facilities. SDCL 9–38–1 is not a model of clarity. The first sentence is a general provision authorizing the establishment of several municipal facilities including camping; however, the following sentence constitutes a particular enactment which restricts the establishment of camping or tourist accommodation facilities after July 1, 1970, but allows the continued maintenance and regulation of such facilities in existence at that time. Appellants assert that the addition of new revenue producing facilities not in existence as of July 1, 1970, are prohibited under the statute. According to appellants, this would include the proposed installation of the sixty-five to seventy electrical hookups to those campsites presently without built-in electrical service. In addition, appellants urge that a prerequisite for the replacement of any facility is that the alteration is necessary to remain in compli-

ance with health and safety standards. Respondent maintains that the legislative mandate of the 1970 amendment to SDCL 9–38–1 was intended to: (1) specifically permit the establishment, improvement, maintenance and regulation of municipal campgrounds; (2) restrict that ability to campgrounds existing at the time of the enactment which grandfathered in campgrounds such as respondent's; and (3) approve the establishment of 1970 campgrounds as found by this Court in *Behrens.*

Camping and tourist accommodation facilities are not statutorily defined, thus it should be used in the sense ordinarily attributed to it. SDCL 2–14–1. Facility is defined in Black's Law Dictionary 531 (5th ed. 1979) as: "Something which is built or installed to perform some particular function, but it also means something that promotes the ease of any action or course of conduct." Applying this definition in the sense commonly attributed to it, it appears that anything which is installed for the convenience or operation of camping and tourist accommodations is a facility. The fact that SDCL 9–38–1 was again amended in 1971 using the express language: "nor shall any municipality having a population of less than twelve hundred establish any campground . . .", further suggests that the term campground is not synonymous with the definition of camping or tourist accommodation facilities as suggested by respondent.

■ Therefore, a literal reading of the particular enactment of SDCL 9–38–1 seems to suggest that no camping or tourist accommodation facility such as electrical hookups, bathrooms, and the like, can be established after July 1, 1970. Thus, such a construction imposes a strict restriction on the general provision encompassed within the same statute which allows a municipality to establish, maintain, improve and regulate camping facilities. However, the applicable principle of statutory construction involving exceptions from a general provision is set forth in *Lien v. Rowe,* 77 S.D. 422, 426, 92 N.W.2d 922, 924 (1958), citing 59 C.J. Statutes § 643 (1932): " 'Exceptions, as a

general rule, should be strictly, but reasonably, construed; they extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception.' "

A strict interpretation of this statute would create an absurd result. The reasonable interpretation to be assigned this statute, based on its turbulent legislative history, is that the intent of the legislature was to prohibit municipalities from enlarging their 1970 camping or tourist accommodation capacity. Thus, such interpretation does not require a strict adherence to campground conditions as they existed on July 1, 1970. The fact that the particular enactment contains a proviso which specifically provides that those 1970 tourist or camping accommodation facilities are "deemed to have been established under the then existing authority to establish public parks", empowers municipalities with the right to improve, maintain and regulate such facilities.

■ Therefore, while municipalities are prohibited from establishing camping or tourist accommodation facilities which would increase their 1970 capacity, the statute does not prevent municipalities from establishing camping or tourist accommodation facilities incident to the improvement, maintenance, and regulation of pre-existing facilities. Accordingly, an old shower house can be replaced with a new one, and new electrical hookups can be installed to those campsites without such service which existed in 1970, and roads within the campground can be improved or repaired to facilitate the campground operation. However, the proposed addition of twenty-five new campsites where the cabins once stood would not conform with the letter and intent of the statute; this constitutes an expansion. This interpretation gives practical effect to both provisions of the statute under consideration and makes them harmonious and workable. *In Re Swanson's Estate,* 79 S.D. 3, 107 N.W.2d 256 (1961).

■ Though respondent argues that it is not technically expanding its campground by converting the space formerly occupied

by thirty-five cabin sites to approximately twenty-four camping sites, it nonetheless embodies an expansion with respect to campground owners. The fact that the statute embraces both camping or tourist accommodation facilities, suggests that the two are separable and distinct.

This interpretation is supported by the legislative history of the statute for at the time of its enactment, the *Behrens* case was pending in this court. *Behrens* was instituted by area motel, lodge and cabin owners to restrain the City of Spearfish from operating or furnishing motel accommodations, cabin units, and rental sites for tents and trailers as part of its park facilities.

It is apparent that the statute envisioned both types of facilities, and was intended to curb the power of municipalities to expand beyond their 1970 camping or tourist accommodation capacity. It was a legislative response to the ever-growing conflict between private enterprise and a governmental entity competing for a share of the same camping and tourist accommodation market. The pith of our holding is that municipalities may improve but not expand beyond their 1970 capacity with relation to camping or tourist accommodation facilities under the language of this statute.

Accordingly, that portion of the judgment vacating all prior restraints on the proposed improvements of the campground, with the exception of the conversion of the space formerly occupied by the cabins to twenty-four new, complete trailer sites, is affirmed. That portion denying injunctive relief as to the proposed conversion is reversed. The case is remanded to the trial court to enter judgment consistent with this opinion.

DUNN and FOSHEIM, JJ., concur.

WOLLMAN, C. J., and MORGAN, J., dissent.

MORGAN, Justice (dissenting).

I dissent.

I agree that the statute is not a model of clarity, but I don't think we have to make it worse by exercising semantic gymnastics. On one side of the road we would approve upgrading bare campsites with electricity and water while on the other side bar removal of cabins for the purpose of installation of similarly improved campsites.

I don't approve the fine distinction between camping and tourist accommodation facilities. The statute refers to them in the conjunctive as well as the disjunctive. The replacement of cabin facilities by camping facilities is no more improvement than upgrading bare campsites to improved campsites. If the city was upgrading campsites to motel facilities I would agree that it is barred, but that is not the case.

I am authorized to state that WOLLMAN, C. J., joins in this dissent.