CITY OF MADISON, a Political Subdivision, State of South Dakota, Plaintiff and Respondent,

v.

Dewayne CLARKE and Pat Clarke, a/k/a Patricia R. Clarke, Defendants and Appellants.

No. 12643.

Supreme Court of South Dakota.

Argued Oct. 15, 1979.

Decided Feb. 13, 1980.

Robert R. Spencer of Ericsson, Spencer & Ericsson, Madison, for plaintiff and respondent.

J. B. Lammers of Lammers, Lammers, Kleibacker & Casey, Madison, for defendants and appellants.

DUNN, Justice.

Defendants appeal from a judgment entered by the Fourth Judicial Circuit Court of South Dakota in favor of plaintiff City of Madison (City) upholding a determination by the City's Board of Adjustment that defendants were not entitled to a zoning variance. We affirm.

Defendants applied for and received a building permit for a house. They did not apply for a permit to build a roofed patio or "carport." The roof of the carport is three feet, four inches from the south boundary line of the property. The house is in a zoning area with a "side-yard" restriction that requires a space of six and one-half feet from a structure to the property line. The house next door, built long before any building restrictions, was almost on the lot line. Thus the carport was built approximately three and one-half feet from the house next door.

The City notified defendants that their structure did not comply with the zoning requirements. Defendants submitted a variance request, and the Board of Adjustment denied it. The Board also denied defendants' request to reconsider the variance request. It is conceded that the City Commission was acting as the Board of Adjustment at this time. It is also conceded that the Zoning and Planning Commission did not act upon the variance request and that no notice was given to defendants or the public as to when the City Commission would be acting in its capacity as the Board of Adjustment.

Defendants refused to remove the roof over the patio. The City brought suit against defendants for violation of its zoning ordinance and prayed for a mandatory injunction. The City does not object to the concrete slab beneath the roof.

■ Our initial conclusion is that defendants' argument that the Board of Adjustment has been delegated legislative power without proper standards is unfounded. SDCL 11–4–17(3) allows boards of adjustment to authorize variances "as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done." Any action taken contrary to this state statute would be void and unenforceable. Because the proper standard is contained within our state statutes, it does not matter whether or not the zoning ordinance of the City specifically incorporated this standard. An identical statute was held to provide a sufficient standard in *Deardorf v. Board of Adjustment of Plan. & Zon. Com'n*, 254 Iowa 380, 118 N.W.2d 78 (1962).

■ Although it is conceded that no notice was given to defendants as required by SDCL 11–4–21, it is also conceded that Dewayne Clarke appeared before the Board of Adjustment when defendants' request was reconsidered. Defendants therefore availed themselves of the opportunity to fully state their case before the Board. The purpose of the notice statute is merely to afford an opportunity to be heard, and defendants' arguments were indeed presented. The general public has not been prejudiced by lack of notice as the variance was denied. To remand this matter simply because the technical notice requirements were not initially satisfied would merely allow defendants to once again address the Board of Adjustment in the same manner as was previously done. Defendants could expect no better hearing through remand than they received when their request was reconsidered.

■ Defendants next contend that SDCL 11–4–12 requires the Planning and Zoning Commission to make a preliminary recommendation, and because no such recommendation was made, they claim error. This is not a correct reading of our statutes.

SDCL 11–4–11 commands that a planning and zoning commission make recommendations to the governing body regarding "the boundaries of the zoning districts and appropriate regulations to be enforced therein." SDCL 11–4–12 prohibits the governing body from acting before the recommendation is received. It is clear, however, that such recommendation is only required when the zoning laws are being enacted or modified. Action by a board of adjustment in granting or denying variance requests has no effect upon the law itself. A variance does not change or modify a zoning law; only the *governing body* may do so. Our statutes therefore do not contemplate a recommendation from a planning and zoning commission regarding variance requests.

▮ Defendants further contend that the actions of the Board of Adjustment were arbitrary in that other more severe ordinance violations have been left undisturbed and other variances have been granted in cases where the structures are more offensive than is theirs. Defendants have not shown, however, that the variances granted in the past were not due to "special conditions" as contemplated by SDCL 11–4–17(3). Furthermore, the record is completely void of any proof that certain existing structures violate the zoning laws without proper variances. Dewayne Clarke merely stated at trial that he was "pretty sure" that certain structures did not comply. He has the burden of proof, and it has not been met.

▮ Finally, defendants have not proved that they would suffer "unnecessary hardship" if this variance request is denied. Dewayne Clarke testified that it would cost $500 to remove the roof and that it would diminish the value of the structure by $8,000. Economic disadvantages, however, do not constitute "unnecessary hardship." The hardship must be substantial and of compelling force, not merely for reasons of convenience or profit. *Deardorf v. Board of Adjustment of Plan. & Zon. Com'n*, 254 Iowa 380, 118 N.W.2d 78, 82 (1962). This is particularly true in this instance where defendants had a building permit for a house but failed to apply for a building permit for the carport. They proceeded to build the carport not only in violation of the zoning ordinance but without applying for a building permit. Had they applied for a permit, this matter could have been settled before they suffered any cost or inconvenience. It was their choice to build a carport in violation of the ordinance and without a permit, apparently on the mistaken belief that once the carport was in place their variance request would be granted. Defendants cannot now complain of the costs involved.

The judgment is affirmed.

WOLLMAN, C. J., and MORGAN, J., and GERKEN, Circuit Judge, concur.

HENDERSON, Justice, dissents.

GERKEN, Circuit Judge, sitting for FOSHEIM, J., disqualified.

HENDERSON, Justice (dissenting).

Respondent's action sounds in equitable relief for injunction. Appellants interposed an answer and counterclaim. The counterclaim of the appellants has not been reached for trial as the learned trial court ordered that the complaint of the respondent was an equitable action and had to be tried to the court first. Thus, the counterclaim was not reached.

The circuit court found in favor of the respondent and against the appellants and entered findings of fact and conclusions of law. Pursuant thereto, judgment was entered which essentially adjudicated that: (1) appellants had constructed a roofed patio or carport without first obtaining a variance contrary to the zoning ordinance of the respondent; (2) appellants had illegally and unlawfully constructed the carport or roofed patio; (3) appellants were permanently restrained and enjoined from maintaining the carport or roofed patio; and (4) appellants had to remove the carport or roofed patio or so much thereof as was necessary to comply with the zoning ordinance of respondent. Appellants timely served their assignments of error and perfected their appeal.

The building inspector and city engineer had been on the premises while appellants were constructing the carport or roofed patio. After it was completed, respondent filed a written objection to appellants' building activity, claiming that it was in violation of the city zoning ordinance. In response to respondent's written objection, appellants submitted a variance request in writing to the city auditor which was denied. Appellants made a subsequent request for reconsideration of the variance which was likewise denied. One might denominate this case as a "forty-inch lawsuit." The respondent city alleges that appellant taxpayers violated the side yard requirement: that structures must be at minimum distance of six and one-half feet from an adjacent lot line. The carport or roofed patio is three feet and four inches from the boundary line. The carport or roofed patio is attached to appellants' dwelling. Curiously enough, had the carport or roofed patio been detached from the dwelling by even scant inches, appellants would have been in compliance. Section 17.2300, Subsection 9 provides that an accessory structure may be constructed within two feet of an inside lot line when the entire structure is within forty feet of the rear property line. Respondent's actions violate an old doctrine, the doctrine of common sense. For some incongruous reason, respondent makes no claim that the slab of cement under the patio or carport violates the side yard requirement.

The pleadings of this case are of utmost importance. Respondent alleged that: (1) the carport was in violation of its zoning ordinances; (2) the respondent city had no plain, adequate or speedy remedy at law to enforce its zoning regulations and ordinances; and (3) the respondent city would suffer irreparable harm, damage and injury unless the carport was removed. Appellants answered by denying that the respondent had no plain, adequate, or speedy remedy at law and submitted as affirmative defenses (1) that the dwelling, with carport or roofed patio, did not constitute a nuisance, hazard or burden upon the public health, safety and welfare; (2) that the

appellants were being arbitrarily discriminated against; (3) that the zoning ordinance was unconstitutional; and (4) that the refusal of the respondent to grant the variance was arbitrary, capricious and unreasonable.

The majority opinion has overlooked a major point in this case which, in my estimation, demands reversal. Respondent sought to permanently restrain and enjoin appellants from violating the city zoning ordinance by maintaining said roof over the carport or patio. Although appellants were technically in violation of the zoning ordinance, respondent failed to submit any proof upon paragraph XIII of its complaint which alleged that the respondent would suffer irreparable harm, damage, and injury unless the actions of the appellants were enjoined. The trial court found in paragraph XVII of its findings of fact that the carport or roofed patio did not constitute a nuisance, hazard or burden upon the public health, safety and welfare and was not a material issue in the case. There was no finding whatsoever that the respondent would suffer irreparable harm, damage and injury unless the actions of the appellants were enjoined. In the trial court's findings of fact and conclusions of law, the trial court failed to find that the respondent had no plain, adequate or speedy remedy at law to enforce its zoning regulations and ordinances. The core of respondent's case for injunction is missing. These omissions of ultimate facts are fatal. SDCL 21–8–15 provides: "A permanent injunction is obtained by a judgment or decree in a civil action under the procedure applicable to all civil actions and subject to the limitations of this chapter or other applicable statutes." A judgment must be supported by appropriate findings and conclusions and they are obviously devoid in this case. "A failure to make a finding of fact on a disputed material issue requires a reversal." *Bell v. Midland Nat. Life Ins. Co.*, 78 S.D. 349, 102 N.W.2d 322, 327 (1960). I vehemently oppose the adoption by implication of a rule that any violation of a city zoning ordinance constitutes a nuisance per se which there-

fore may be enjoined, absent a showing that such violation will cause the city to suffer irreparable harm or that it is hazardous to the health, safety, and welfare of the community.

I would reverse on this basis alone, but I feel compelled to comment further on the majority's disposition of the case. The majority opinion holds that the Board of Adjustment is guided by sufficient standards contained in SDCL 11–4–17(3). The sole basis for its holding rests on an Iowa case, *Deardorf v. Board of Adjustment of Planning and Zoning Commission*, 254 Iowa 380, 118 N.W.2d 78 (1962). Granted, both state statutes are identical; however, in addition to that particular statute, we must consider SDCL 11–4–13 which provides:

> Except as otherwise provided by § 11–4–24, the governing body *shall* provide for the appointment of a board of adjustment, or for the planning and zoning commission to act as a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of this chapter, *shall* provide that the said board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, *make special exceptions or grant variances to the terms of the ordinance with general or specific rules therein contained.* (Emphasis added).

Accordingly, the ordinances must furnish some guides or standards which will enable those to whom the law is applied to reasonably determine their rights thereunder, and so that a determination of those rights will not be left to the purely arbitrary decision of such board. *See Chicago, Rock Island and Pacific R. Co. v. Liddle*, 253 Iowa 402, 112 N.W.2d 852 (1962). In *Graves v. Johnson*, 75 S.D. 261, 63 N.W.2d 341 (1954), this court acknowledged the general rule that standards fixed by law must be adopted in an ordinance which would permit an administrative body such as a Board of Adjustment to fulfill the legislative policy established by the municipal governing body.

I would hold that the trial court erred in finding that the zoning ordinance of respondent did not contain an unlawful delegation

of power by a legislative body to an administrative body. The zoning ordinance in question provides for a Board of Adjustment and gives that board the authority to "hear and decide appeals arising from administrative interpretation of this ordinance and to allow variances," but failed to establish safeguards, standards, conditions, rules or regulations as provided by state law which would be equally applied to all citizens. This court has recognized the doctrine that a legislative body may not abdicate its essential power to legislate or delegate that power to any other department or body, and that a quasi-legislative power and function can be delegated only if the legislative body adopts adequate standards to guide its delegate. *Schryver v. Schirmer*, 84 S.D. 352, 171 N.W.2d 634 (1969). Therefore, the commission's actions were a nullity for failure to comply with the enabling legislation.

Respondent never created a Board of Adjustment under the terms of this statute. The city commission gave no public notice that it was acting as a Board of Adjustment as required by SDCL 11–4–21, made no public announcements at its meeting that it was acting as a Board of Adjustment, kept no minutes of its proceedings or records of its examinations on official matters contrary to SDCL 11–4–16, promulgated no rules in accordance with the provisions required by a city ordinance adopted pursuant to SDCL 11–4–18 and exercised only a majority vote rule in consideration of the variance request. SDCL 11–4–23 requires a concurring vote of four members of the Board of Adjustment on grants or denials of variances. The city commission acted upon variance requests without following any standards, guidelines or patterns as specified in SDCL 11–4–13. In addition, building permits were sometimes required and other times not. Respondent made up the rules as it went along. Without keeping minutes of its official action, the governing body could say anything it wanted to say about what transpired at its meetings, and variances could be either denied or granted on the mere individual whim of

"board" members. The case here can be analogized with that of *Zylka v. City of Crystal*, 283 Minn. 192, 167 N.W.2d 45 (1969) which involved an applicant's denial of a special use permit. The Minnesota Supreme Court stated:

> It is undisputed that in passing upon plaintiff's application neither body preserved any record of the hearing before it, made any findings of fact, or recorded any reason or reasons for its action . .
> While plaintiff, indeed, has the burden to show arbitrariness, the failure of the council to record any legally sufficient basis for its determination at the time it acted made a prima facie showing of arbitrariness inevitable. Id. at 50.

The city commission was therefore at liberty to grant a variance for a bad reason, good reason, or no reason at all. It had unbridled discretion. This unlawful, arbitrary, and capricious conduct precludes a reviewing tribunal from determining why the city commission acted as it did. This is a European throwback to the old line of thinking that the "King can do no wrong." And it was to avoid this type of administrative tyranny, that our state legislature enacted SDCL 11–4–13. As I review the record and consider the oral arguments, I can find no enforcement procedures for building codes or zoning ordinances violations being taken other than against appellants. The discrimination against them is vividly apparent. I was shocked to learn in oral argument before this court that the Respondent City of Madison, long after appellants' variance was considered and denied, began to give public announcements and notices. In other words, respondent undertook to patch their wrong. However, taking off its municipal coat of tyranny comes too late to help the citizen-appellants.

This case cries out for reversal given the weakness of the Findings of Fact and Conclusions of Law, the outright neglect and refusal of the City of Madison to comply with our state law, and the inequitable posture of that city in watching the appellants build the carport and then telling them to tear it down. I find the lower court's rulings to be clearly erroneous as our state statutes have been aborted and the legislative will flouted. I would reverse.