Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596
HTML Code Â© State Bar of South Dakota, 1999
CHRIS W. COLE,
Petitioner and Appellee,
v.
BOARD OF ADJUSTMENT OF THE CITY OF HURON
(the City Commission acting thereas),
Defendant,
and Casey's General Stores, Inc.,
Intervenor and Appellant.
[2000 SD 119]
South Dakota Supreme Court
Appeal from the Third Judicial Circuit, Beadle County, SD
Hon. Jon R. Erickson, Judge
#21210--Reversed
Todd D. Wilkinson, Gary W. Schumacher
Wilkinson & Wilkinson, DeSmet, SD
Attorneys for Petitioner and Appellee.
Rodney Freeman Jr., Jeff Burns
Churchill, Manolis, Freeman, Kludt & Shelton, Huron, SD
Attorneys for Intervenor and Appellant.
Considered on Briefs Apr 24, 2000; Reassigned Jul 11, 2000
Opinion Filed Aug 30, 2000
GILBERTSON, Justice (on reassignment).
[Â¶1] The Huron Board of Adjustment (Board) granted a variance to Casey's General Stores, Inc, Floyd Peterson and Anthony Stahl (Casey's). Chris W. Cole, an adjoining property owner, was granted a writ of certiorari by the circuit court. The circuit court reversed and Casey's appeals. We reverse.

FACTS AND PROCEDURE

[Â¶2] This is the second appeal for these parties. The basic facts underlying this appeal are recited in Cole v. Bd. of Adj., City of Huron, 1999 SD 54, 592 NW2d 175. The facts necessary for resolution of this appeal follow.
[Â¶3] On November 25, 1997, Casey's applied for a variance for three lots on a corner of a busy highway in Huron. Two of the lots were vacant and owned by Peterson. (fn1)  The third lot, with a house situated thereon, was owned by Stahl. In the application, Casey's requested permission to construct a gas station and convenience store on the properties.
[Â¶4] The variance request was met with opposition and a public hearing was held on December 15, 1997. On January 12, 1998, the Board granted the variance to Casey's. On January 14, 1998, Cole filed for a writ of certiorari and appealed the Board's decision to circuit court.
[Â¶5] The circuit court reversed the Board's decision finding "[t]he action of the Board granting Casey's a variance was not done in compliance with the City's zoning ordinances." Casey's appealed and we held that the circuit court failed to use the proper standard of review. The case was reversed and remanded. See Cole, 1999 SD 54, 592 NW2d 175.
[Â¶6] On remand, the circuit court again reversed the Board's decision. It concluded that the granting of the variance was "illegal and in excess of [the Board's] jurisdiction" because it "failed to make any finding 'that there exists special conditions which constitute an unreasonable deprivation of use.'" The circuit court concluded that the "granting of the variance was merely a grant of privilege, which is clearly prohibited by the City's Zoning Ordinances."
[Â¶7] Casey's appeals, raising the following issue:


Whether the circuit court exceeded its jurisdiction in reviewing the Board's decision de novo.

STANDARD OF REVIEW



Zoning ordinances are interpreted according to the rules of statutory construction and any rules of construction included in the ordinances themselves. The interpretation of an ordinance presents a question of law which we review de novo. When interpreting an ordinance, we must assume that the legislative body meant what the ordinance says and give its words and phrases plain meaning and effect.
Because this matter was presented to the trial court on certiorari, our scope of review is limited to the questions of whether the inferior courts, officers, boards, and tribunals had jurisdiction and whether they have regularly pursued the authority conferred upon them. 'When such courts, officers, boards, or tribunals have jurisdiction over the subject matter and of the party, their action will be sustained unless in their proceedings they did some act forbidden by law or neglected to do some act required by law.'
Cole, 1999 SD 54, Â¶4, 592 NW2d at 176 (quoting Peters v. Spearfish ETJ Planning Comm'n, 1997 SD 105, Â¶Â¶5-6, 567 NW2d 880, 883 (internal citations omitted)) (emphasis in original).

ANALYSIS AND DECISION

[Â¶8] Casey's argues that the circuit court erred in examining the merits of the Board's decision to grant the variance, instead of restricting its review to whether or not the Board acted in excess of its jurisdiction. Thus, Casey's contends that the circuit court, "in its findings of fact and conclusions of law has usurped the authority and discretion of the Board ... by analyzing and replacing the Board's findings [with its] own."
[Â¶9] Pursuant to SDCL 21-31-1, (fn2)  the only question presented on certiorari "is whether the lower tribunal exceeded its jurisdiction." Cole I, 1999 SD 54, Â¶10, 592 NW2d at 177. See also Hamerly v. City of Lennox Bd. of Adj., 1998 SD 43, Â¶14, 578 NW2d 566, 569 (stating that "the circuit court should ... [limit] its judgment to a reversal of the Board's final decision as illegal and in excess of its jurisdiction."); Willard v. Civil Service Board of Sioux Falls, 75 SD 297, 298, 63 NW2d 801, 801 (1954) (noting that review of a circuit court's proceedings on certiorari extends only to a determination of whether the board acted without jurisdiction or exceeded its jurisdiction); Kirby v. Circuit Court, McCook County, 10 SD 38, 40-1, 71 NW 140, 141 (1897) (stating "the only questions to be considered in this court [on a writ of certiorari] are whether the court, upon the record before it, exceeded its jurisdiction, or whether that court has failed to regularly pursue the authority of such court.").
[Â¶10] According to Huron City Ordinance 23.04.028, a variance applicant must prove by a preponderance of the evidence that the variance is not contrary to the public interest, and that if the variance is not granted, there exists special conditions which constitute an unwarranted, or unreasonable hardship, which "constitutes an unreasonable deprivation of use as distinguished from the mere grant of a privilege."
[Â¶11] Instead of reviewing whether the Board exceeded its jurisdiction in granting the variance, the circuit court tried the case on the merits, by analyzing Huron City Ordinance 23.04.028 (fn3)  and concluding that there was no evidence supporting the Board's finding of a special condition to justify the variance. The circuit court went as far to state in its opinion that the Board had "merely grant[ed] Casey's a privilege," instead of determining the existence of an unwarranted or unreasonable hardship.
[Â¶12] This Court stated in Cole I:


It is quite clear from the Findings of Fact and Conclusions of Law and the incorporated memorandum opinion, the trial court did not utilize the correct standard of review for a writ of certiorari. The trial court reviewed the record de novo, taking into consideration the status of the property and drawing the conclusion that there was no evidence supporting the Board's finding of a special condition to justify the variance. We have said, "certiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding. ..." Willard, 75 SD at 298, 63 NW2d at 801 (emphasis added).
1999 SD 54, Â¶11, 592 NW2d at 177. Similarly, here, the circuit court reviewed the Board's record de novo, finding in its memorandum opinion that "[n]ot one of the Board of Adjustment's findings supports a conclusion of law that Casey's has met it[s] burden of proof to prove by a preponderance of evidence that the second prong of the City of Huron's test for granting Casey's a variance has been met ... ."
[Â¶13] The circuit court's judgment in this case stated eight findings of fact and eight conclusions of law, and reversed the Board's decision based upon such findings and conclusions. After an examination of the findings of fact and conclusions of law entered by the circuit court, we reach but one conclusion--that "the [circuit] court in effect tried the petition de novo in that it made its own determinations upon the merits of the petition for a variance, thereby substituting its discretion for that of the Board." See Board of Zon. App. v. American Fletcher Nat'l. Bank, 205 NE2d 322, 324 (IndCtApp 1965).
[Â¶14] In City of Madison v. Clarke, 288 NW2d 312 (SD 1980) we applied the three part test contained in SDCL 11-4-17(3) to decide this type of an issue. A variance will be granted where it:


[1] will not be contrary to the public interest, [2] where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and [3] so that the spirit of the ordinance shall be observed and substantial justice done.
Id. at 313. The circuit court's memorandum opinion incorporated into its findings conceded criteria [1] in favor of the Board as it noted, "[a] limited review of the transcript of the proceedings below show there was evidence submitted which would support a findings [sic] to the effect that this variance would not be against the public interest." As far as criteria [2] the circuit court conceded a claim of hardship can be made as the property has been vacant for many years and was lost for taxes to the county. (fn4)  Beyond that, when it was offered by the county for sale to the public, Peterson was the sole bidder.
[Â¶15] While the Court tried to seize on the isolated word "may" cause unnecessary hardship, the fact is that while this property was zoned residential, it was of so little value that the previous private owner in effect donated it to the public in lieu of retaining ownership and paying taxes thereon. These facts certainly provide the needed evidentiary support to justify the Board's actions under the limited scope of review for certiorari concerning criteria [2]. Finally as to criteria [3], the City made a finding which is supported by the evidence and not overturned by the circuit court:


That North Highway 37 is that part of the City of Huron affected by the variance application is currently a state highway and presently subject to extensive commercial traffic and the granting of the said variance should not substantially increase noise, congestion, or otherwise disrupt the neighborhood.
The City further found that "[t]he granting of a variance for a convenience store will be in harmony with the general purpose and intent of the zoning ordinances, while maintaining the integrity of the comprehensive plan."
[Â¶16] In making a determination of the merits, the circuit court usurped the Board's administrative function and expertise in dealing with zoning problems of the community of Huron. See Falvo v. Kerner, 225 NYS 747, 749 (1927) (stating that "[t]he determination of the board was an administrative function, which should not be interfered with by the courts in the absence of proof that the board had abused the discretion with which it was clothed by the ordinance creating it."); American Fletcher, 205 NE2d at 324 (noting "it must be recognized by the trial court that the Board is an administrative body especially expertise in the zoning problems of its particular jurisdiction.").
[Â¶17] The Board has wide discretion in deciding whether or not to grant a variance to a zoning ordinance, and in reviewing that decision, the circuit court may not substitute its discretion for that of the Board. Id. This limitation on scope of review prevents "courts from usurping policy decisions from other branches of government." Bell v. Township of Bass River, 482 A2d 208, 212 (NJSuperCtLawDiv 1984). Thus, courts must not review the merits of a petition or evidence in the absence of a showing that the Board "acted fraudulently or in arbitrary or willful disregard of undisputed and indisputable proof." Cole, 1999 SD 54, Â¶10, 592 NW2d at 177 (citing Willard, 75 SD at 298, 63 NW2d at 801). This is the standard of review which should have been utilized by the circuit court upon its review of Casey's petition. Instead, the circuit court analyzed and replaced the Board's findings with its own, substituting its judgment for that of the Board in determining whether the facts were adequate to be classified as an unwarranted hardship. The circuit court improperly did so despite declaring "[a] careful review of the findings [of the Board] indicate that there were many disputed facts."
[Â¶18] We reverse and remand to the circuit court for further proceedings with application of the proper standard of review.
[Â¶19] MILLER, Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.
[Â¶20] SABERS, Justice, dissents.
SABERS, Justice (dissenting).
[Â¶21] 1. The Circuit Court Applied The Proper Standard Of Review In Determining That The Board's Grant Of The Variance Was Illegal.
[Â¶22] I disagree with the majority opinion's determination that the circuit court reviewed the Board's record de novo, "thereby substituting its discretion for that of the Board."
[Â¶23] As we stated in the prior appeal, "the only question presented on certiorari is whether the lower tribunal exceeded its jurisdiction." Cole v. Bd. of Adj., City of Huron, 1999 SD 54, Â¶10, 592 NW2d 175, 176 (citations omitted). Thus, the circuit court's review is "confined to a review of the legality of the municipality's zoning decision." Hamerly v. City of Lennox Bd of Adj, 1998 SD 43, Â¶14, 578 NW2d 566, 569. Furthermore, "certiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding, at least in the absence of fraud, or willful and arbitrary disregard of undisputed and indisputable proof wherein credibility of witnesses is not involved." Willard v. Civil Service Bd of Sioux Falls, 75 SD 297, 63 NW2d 801 (1954) (quoting State ex rel. Grey v. Circuit Court of Minnehaha County, 58 SD 152, 235 NW 509, 511 (1931)).
[Â¶24] This record reflects that the circuit court, per Willard, properly limited its review to the legality of the variance granted to Casey's and the Board's compliance with SDCL 11-4-17(3). It ultimately concluded that the variance was illegally granted because there was no "existence of special conditions which constitute an unwarranted or unreasonable hardship ... ." In its rationale, the circuit court examined the Board's finding of fact number 9 which provides that the vacant lots "evidences a lack of marketability of those lots for residential development; therefore use of such land for some commercial purpose may be necessary for the reasonable use of the property." (emphasis added). The Board also determined that a refusal to grant a variance for commercial use of the property "could substantially impair its appropriate use or development" and the land "cannot yield a reasonable return if used only for a purpose allowed in that zone." These findings fail to establish necessity and merely provide for possibility, which is insufficient to satisfy the unnecessary hardship test set forth under SDCL 11-4-17. (fn5)  The circuit court correctly determined that this finding conflicts with Casey's admission that they purchased the property without intending to market it as residential property. (fn6) 
[Â¶25] The circuit court and this court must look at the evidence, as well as the sufficiency thereof, to ascertain whether the Board exceeded its jurisdiction. See Graziano v. Bd of Adj of City of Des Moines, 323 NW2d 233 (Iowa 1982) (reviewing a certiorari action and reversing the board's granting of a variance). Although the circuit court does not determine the "correctness of a finding," the circuit court and this court must analyze the "correctness of a finding" when ascertaining whether the Board acted with "willful or arbitrary disregard of undisputed and indisputable proof." Willard, 63 NW2d at 801. This is precisely what the circuit court did here.
[Â¶26] Accordingly, there is an insufficient showing to support the claim that the circuit court used the wrong standard of review. In fact, the circuit court expressed and complied with the proper standard of review citing Willard, 63 NW2d at 801. See also Hamerly, 1998 SD 43, Â¶14, 578 NW2d at 569 (stating that the circuit court's review is "confined to a review of the legality of the municipality's zoning decision."). Therefore, the circuit court applied the correct standard of review in determining whether the variance was granted in compliance with SDCL 11-4-17 and the ordinances of the City of Huron.
[Â¶27] Because the circuit court's review was proper, the second issue must also be addressed.
[Â¶28] 2. The Board Exceeded Its Jurisdiction In Granting A Variance To Casey's.
[Â¶29] As indicated, the Board may grant a variance if it finds that "strict application" of the ordinance to the applicant would cause unnecessary hardship. We have previously defined "unnecessary hardship" to require a hardship that is "substantial and of compelling force, not merely for reasons of convenience or profit." City of Madison v. Clarke, 288 NW2d 312, 314 (SD 1980) (citing Deardorf v. Bd of Adj of Planning and Zoning Comm'n, 118 NW2d 78, 82 (Iowa 1962)). More specifically, unnecessary hardship is demonstrated when:


(1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone;
(2) the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and
(3) the use to be authorized by the variance will not alter the essential character of the locality.
Deardorf, 118 NW2d at 81 (citations omitted) (emphasis added). (fn7)  The burden was on the applicant to show all three elements. Greenawalt v. Zoning Bd of Adj of City of Davenport, 345 NW2d 537, 542 (Iowa 1984). "A failure to demonstrate one of them requires the [B]oard to deny the application." Id. (citations omitted).

A. Reasonable Return

[Â¶30] Casey's was required to prove that the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone. "An ordinance deprives a landowner of a reasonable return if all 'productive use of the land' is denied." Id. (citation omitted). To show a deprivation of all "productive use of the land," the applicant must show that the property has changed and the "uses for which is was originally zoned are no longer feasible." Id. However, the granting of a variance will not be upheld when the only evidence presented is that the value of the applicant's land has been "depreciated by the zoning regulations, or that a variance would permit him to maintain a more profitable use." Id. (citation omitted).
[Â¶31] Here, the Board, in granting the variance, found that the fact that the vacant lots were acquired by the county for delinquent taxes "evidences a lack of marketability of those lots for residential development." As indicated, the Board concluded that the commercial use of the land "may be necessary for the reasonable use of the property." It also determined that a refusal to grant a variance for commercial use of the property "could substantially impair its appropriate use or development" and the land "cannot yield a reasonable return if used only for a purpose allowed in that zone." Neither of the italicized words are sufficient to establish necessity.
[Â¶32] "[T]he sole consideration is whether the land or structure is capable of being used in a reasonable manner which is consistent with the applicable zoning provisions." 83 AmJur2d Zoning and Planning Â§ 864 (1992). A review of the record discloses that Casey's offered no evidence to show that the construction of single-family residences was not feasible. Nor did they present evidence that if the land were used to construct single-family residences, the return would be unreasonable or that they would be deprived of a productive use of the land. See Zimmerman v. O'Meara, 245 NW 715, 718 (Iowa 1932) (stating "[t]here is nothing in the record to indicate that an unnecessary hardship will be imposed" if applicant was denied the variance).
[Â¶33] Further, Casey's failed to show that the lots could not be sold to a person who would use the property in conformance with the zoning requirements. See Sheeley v. Levine, 538 NYS2d 93, 95 (NY 1989) (upholding the granting of the variance where the property was (1) the subject of a multiple listing, (2) priced comparatively to similar structures, (3) shown to 41 people with no offers to purchase as a single-family home, and (4) evidence was presented that it would be "difficult and impractical" to maintain the property as a single-family home in accordance with the zoning regulations). The fact that the county, in 1970, bought the property at a tax sale is not indisputable evidence that the property is not marketable for residential purposes today. Some attempt at a better showing should have been offered.
[Â¶34] In addressing the reasonable return of property, one court determined that neither depreciated value nor financial loss is an appropriate indicator in a variance case:


It does not appear from the record that the subject area is unfit for a conforming use, although such use may not be as inviting and the lots as desirable as some other lots in the use district. However, such depreciated value does not fall within the class of peculiar and exceptional circumstances necessary to sustain the granting of a use variance. If so, other property owners desiring to sell their property in a use zone at a premium for nonconforming purposes would frequently seek use variances, the granting of which would tend to destroy or greatly impair the whole system of zoning.
Brock v. Bd of Zoning Adj, 571 So2d 1183, 1185 (AlaCivApp 1990) (citation omitted). Furthermore, evidence of the "best use" of the property is "entitled to little or no weight in a variance case." Bd of Zoning Adj v. Dauphin Upham Joint Venture, 688 So2d 823, 825 (AlaCivApp 1996) (citations omitted). The applicant's own economic situation is also an improper basis for establishing unnecessary hardship. City of Madison, 288 NW2d at 314 (stating that "[e]conomic disadvantages ... do not constitute 'unnecessary hardship.'").
[Â¶35] Here, the evidence does not support a conclusion that Casey's would endure "a loss of all beneficial use of the property" if the variance was denied. The record is void of any evidence establishing any reasons the property cannot be used in accordance with the zoning ordinances. Nor does the Board make adequate findings to support the same. For example, the Board found that the City Administrator had stated that the operation of a convenience store would not be an "inappropriate" use of the land. This finding affords little support to the determination of unnecessary hardship.
[Â¶36] In a similar case, In re Appeal of McClure, 203 A2d 534, 535 (Pa 1964), a variance was granted to construct a bank in an area zoned for single-family residences. The board concluded, on two occasions, that the land was not suitable for residential use. In reversing the board, the McClure court determined:


Such finding [that the land was not suitable for residential use] does not ... command the grant of a variance, even if the public interest would not thereby be adversely affected. As a general rule, if the land, as a practical matter, cannot be utilized for residential purposes, then the land should be rezoned by an appeal to the legislative body. Such rezoning cannot and must not be accomplished under the guise of a variance.
Id. at 537 (emphasis added). See also Graziano, 323 NW2d at 237 (stating "[t]he board cannot alter the zoning ordinances by granting variances ... . The power to change the zoning restrictions belongs to the zoning commission and the city council."). (fn8)  A variance can not be used as a pretense to change or modify a zoning ordinance; only the governing body has the power to do that. City of Madison, 288 NW2d at 314.
[Â¶37] The majority opinion points out that the Board found:


That North Highway 37 is that part of the City of Huron affected by the variance application [and] is currently a state highway and presently subject to extensive commercial traffic and the granting of the said variance should not substantially increase noise, congestion, or otherwise disrupt the neighborhood[,]
and that the Board also made several findings referring to "public health, safety or welfare." For example, the Board found that:


The granting of a variance will bring changes to the neighborhood, but these changes will not necessarily be injurious or otherwise detrimental to the public health, safety or welfare.
The above findings merely support the determination that the Board attempted to accomplish rezoning by granting a variance to Casey's. As stated, zoning laws are designed to promote "public health, safety and welfare." See SDCL 11-6-2. This is not the standard used to determine whether to grant a variance. In fact, because variances circumvent the underlying purpose of zoning ordinances, they should be granted sparingly and only when it is shown that the strict application of the zoning ordinances results in an unnecessary hardship.
[Â¶38] The above findings further support a determination that the Board's decision did not satisfy the second prong of the unnecessary hardship test: "the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself." (emphasis added). Clearly, this prong was not satisfied as these findings reflect that the Board determined that the zoning ordinance in place was unreasonable due to the location of Highway 37 and the growth of the city. Again, the Board can not accomplish through variance what can only be accomplished properly by modifying the zoning ordinances.
[Â¶39] It appears obvious that Casey's (and the City of Huron) should bite the bullet and petition to rezone this property rather than to attempt to shortcut the proper proceedings by variance. See Schrank v. Pennington County Bd of Comm'r, 2000 SD 62, 610 NW2d 90 (providing that the County's amendment to its zoning ordinances rendered a conditional use permit, previously determined to be illegally granted, to be valid). As stated in Schrank, the decision of how a community is to be zoned or rezoned "'rests with the local legislative body.'" Id. Â¶7 (quoting Tillo v. City of Sioux Falls, 82 SD 411, 415, 147 NW2d 128, 130 (1966) (other citation omitted)).
[Â¶40] In light of the evidence presented to the Board, Casey's attempted to accomplish, through a variance, what could only be accomplished by a modification in the zoning ordinances. Because the zoning laws are designed to promote public health, safety and welfare, the power to grant a variance should be exercised sparingly and in accordance with the public welfare. Therefore, "conditions personal to the land-owner are not relevant to whether a variance should be granted." Hutches v. St. Louis County, 848 SW2d 616, 619 (MoCtApp 1993). In other words, a variance should not be granted simply because such a grant would permit the owner to obtain a greater profit from the sale or use of the property.
[Â¶41] An applicant for a variance bears a great burden of proving that unnecessary hardship will result if the variance is denied. Casey's failed to establish, before the Board, that it would be deprived of all productive use of the land if the variance was not granted. Therefore, the Board's conclusion that the land could not yield a reasonable return if used only for the purpose allowed, is error and renders the grant of the variance illegal.
[Â¶42] Since no showing of an unnecessary hardship was attempted or established, the Board exceeded its jurisdiction and we should affirm. 
Footnotes
1.  Evidence was presented at the public hearing that the vacant property was used as a public skating rink from 1927 to 1997. The Parks & Recreation Department maintained the property through those years, even when private persons owned the property. The county obtained the property from a citizen named "Murphy" for recovery of delinquent taxes. The county owned the property for 27 years when, in June of 1997, sold it at a public auction to Peterson, who was the only bidder. 
2.  SDCL 21-31-1 provides:


A writ of certiorari may be granted by the Supreme and circuit Courts, when inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and there is no writ of error or appeal nor, in the judgment of the court, any other plain, speedy, and adequate remedy. 
3.  Huron City Ordinance 23.04.028 entitled "Variance - Findings of Fact," provides:


(a) A variance may be granted to the strict application of this chapter as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the title will result in unwarranted hardship, which constitutes an unreasonable deprivation of use as distinguished from the mere grant of a privilege, and so that the spirit of the title shall be observed and substantial justice done.
(b) In any hearing concerning the requested variance, the applicant carries the burden of proving that the request complies with the necessary findings and that the granting of a variance is in keeping with the spirit and intent of this chapter.
(c) In granting a variance, the board of adjustment shall prescribe any conditions and safeguards that it deems to be necessary or desirable. Such variance may be granted upon finding that there exists an unwarranted hardship, which constitutes an unreasonable deprivation of use as distinguished from the mere grant of a privilege. The board of adjustment may find that some or all of the following conditions exist:

(1) The plight of the applicant is due to unique circumstances of their property;
(2) The plight of the applicant is not due to the circumstances or conditions of the neighborhood or zone;
(3) The unique circumstances which render the property incapable of being used in compliance with this chapter have not been caused or created by any actions of the applicant;
(4) The variance requested is the minimum variance which is necessary for the reasonable use of the property;
(5) The variance requested can be granted with substantial justice to the applicant as well as other property owners in the area;
(6) That the granting of this variance will be in harmony with the general purpose and intent of this chapter while maintaining the integrity of the comprehensive plan;
(7) The granting of this variance will not be injurious to the neighborhood or otherwise detrimental to the public health, safety or welfare;
(8) That for an area variance, compliance with the strict application of this chapter governing area, setbacks, frontage, sideyards, height, bulk or density will unreasonably prevent the owner from using the property for a permitted purpose;
(9) That for a use variance, the land in question cannot yield a reasonable return if only used for a purpose allowed in the zone. 
4.  The circuit court stated:


Finding number (9) states that the property has been vacant for many years and was acquired for delinquent taxes. The Hearing Officer ultimate [sic] finds that this subordinate fact "evidences a lack of marketability of those lots for residential development, therefore use of such land for some commercial purpose may be necessary for the reasonable use of the property." [emphasis in original]. A review of the record for the limited purpose of testing the legality of the proceedings, shows that there is evidence to support that Finding [number] (9). The impact of this finding is contrasted and conflicted by Finding number (8). The evidence also confirms Finding number (8) that the current owners purchased never intending it to be marketed as a residential property.
Here the circuit court conceded there was, at a minimum, a conflict in the evidence. It then improperly proceeded to resolve this conflict by conducting a de novo review. If the question is properly one of jurisdiction, then a conflict in the evidence by itself establishes there was the required evidence to support the Board's determination to grant a variance. 
5.  A variance can be granted only if the Board determines that it:


[1] will not be contrary to the public interest, [2] where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and [3] so that the spirit of the ordinance shall be observed and substantial justice done.
SDCL 11-4-17(3). See also Huron City Ordinance 23.04.028 (adopting this three-prong test).
Issue 2 of this case, which was not reached by the majority opinion, is whether the Board exceeded its jurisdiction in granting a variance to Casey's. In determining that the circuit court did not err in reviewing the Board's decision, I also conclude that the Board illegally granted the variance to Casey's because there was no showing that the strict application of the ordinance to Casey's would cause unnecessary hardship. 
6.  See Issue 2, infra, for an analysis of why the Board's grant of this variance was illegal. 
7.  This standard is also incorporated into Huron City Ordinance 23.04.028. 
8.  Casey's withdrew their application for zoning change prior to applying for a variance.