1997 SD 105

**John S. PETERS, Jerry J. Boyer, John H. Esling Trust, People for Responsible and Orderly Development of Lawrence County, Petitioners and Appellees,**

v.

**SPEARFISH ETJ PLANNING COMMISSION, Spearfish City Council and the Lawrence County Board of Commissioners, Appellees,**

and

**Spring Creek Ranch, LLC., and Landmark Realty and Development Co., Appellants.**

No. 19879.

Supreme Court of South Dakota.

Argued June 3, 1997.

Decided Aug. 20, 1997.

Reed C. Richards of Richards and Richards, Deadwood, for appellees Peters, Boyer, Elsing Trust.

Thomas E. Brady, Spearfish, for appellants.

MILLER, Chief Justice.

[¶ 1.] Landmark Realty and Development Company (Landmark) and Spring Creek Ranch appeal the trial court's construction of a zoning ordinance and its decision that the Spearfish ETJ Planning Commission (Commission), the Spearfish City Council (City) and the Lawrence County Board of Commissioners (County) exceeded their authority and jurisdiction by approving a proposed planned unit development near Spearfish, South Dakota. We affirm.

## FACTS

[¶ 2.] Landmark owns a 240–acre tract of land in Lawrence County, South Dakota. The land is located within the extraterritorial jurisdiction zoning area governed by the ETJ Planning Ordinances adopted by City and County and overseen by Commission.[1] Landmark's property is zoned A–1, general agriculture.

[¶ 3.] As required by the ETJ Planning Ordinances, Landmark requested Commission's approval of a planned unit development (PUD), Spring Creek Ranch, to be constructed on the tract of land at issue in this appeal.

---

1. The Spearfish ETJ Planning Commission is an advisory commission appointed by the Spearfish City Council and the Lawrence County Commission to oversee planning and zoning matters within the three-mile zone surrounding the Spearfish City borders pursuant to SDCL 11–6–21. Both City and County must approve any actions by Commission.

The proposed PUD consisted of fifty-five single family residence estates, three clusters of single family attached residences containing twenty units, one bed and breakfast inn with six to eight guest rooms, and three to six duplex cabin units. The remainder of the tract was designated as "green space" for developing walking, biking, and cross-country skiing trails, with at least fifty percent of the green space slated as "open space," consistent with the requirements for PUDs. Commission recommended approval of the proposed PUD and, after reviewing the request, City and County approved the same.

[¶ 4.] John S. Peters, Jerry Boyer, the John H. Esling Trust,[2] and People for Responsible and Orderly Development of Lawrence County (collectively referred to as "Petitioners") filed a petition for a writ of certiorari with the trial court alleging Commission, City and County exceeded their authority and jurisdiction in approving the proposed PUD. The trial court granted Petitioners' petition for certiorari and allowed Spring Creek Ranch to intervene in the matter. Following oral arguments, the trial court concluded the zoning ordinance on which Commission, City and County relied in approving the proposed PUD was ambiguous. It further concluded Commission, City and County exceeded their respective authority and jurisdiction by approving a development which exceeded the allowed population density. Landmark and Spring Creek Ranch appeal.

**STANDARD AND SCOPE OF REVIEW**

[¶ 5.] Zoning ordinances are interpreted according to the rules of statutory construction and any rules of construction included in the ordinances themselves. *Cordell v. Codington County*, 526 N.W.2d 115, 117 (S.D.1994). *See also* 83 AmJur2d *Zoning and Planning* § 698 (1992). The interpretation of an ordinance presents a question of law which we review de novo. *See Matter of Estate of Gossman*, 1996 SD 124, ¶ 6, 555

N.W.2d 102, 104 (citing *Sioux Valley Hosp. Ass'n v. State*, 519 N.W.2d 334, 335 (S.D. 1994); *King v. John Hancock Mut. Life Ins. Co.*, 500 N.W.2d 619, 621 (S.D.1993)). When interpreting an ordinance, we must assume that the legislative body meant what the ordinance says and give its words and phrases plain meaning and effect. *See Nilson v. Clay County*, 534 N.W.2d 598, 601 (S.D. 1995).

[¶ 6.] Because this matter was presented to the trial court on certiorari, our scope of review is limited to the questions of whether the inferior courts, officers, boards, and tribunals had jurisdiction and whether they have regularly pursued the authority conferred upon them. *Save Centennial Valley Ass'n Inc. v. Schultz*, 284 N.W.2d 452, 454 (S.D.1979). "When such courts, officers, boards, or tribunals have jurisdiction over the subject matter and of the party, their action will be sustained unless in their proceedings they did some act forbidden by law or neglected to do some act required by law." *Id.* (citing *State v. State Board of Assessment and Equalization*, 3 S.D. 338, 53 N.W. 192 (1892)).

**DECISION**

[¶ 7.] The trial court concluded ETJ Planning Ordinance § 4.10.1 was ambiguous. It interpreted the ordinance to limit residential density for PUDs in an A–1, general agriculture district to one dwelling per forty acres. Based on this interpretation, the trial court concluded Commission, City and County exceeded their authority and jurisdiction in approving the proposed PUD. We agree.

[¶ 8.] "'A[n ordinance] or portion thereof is ambiguous when it is capable of being understood only by reasonably well-informed persons in either of two or more senses.'" *In re Famous Brands, Inc.*, 347 N.W.2d 882, 886 (S.D.1984) (citations omitted). Ambiguity also exists when the literal

---

**2.** The John H. Esling Trust owns property adjoining the proposed PUD. This property is zoned A–

1, general agriculture.

meaning of legislation leads to an absurd or unreasonable conclusion. *Matter of Sales Tax Refund Applications,* 298 N.W.2d 799, 803 (S.D.1980). The fact the parties disagree as to the meaning to be given to an ordinance, and an appeal such as the one before us results, does not make the ordinance ambiguous per se. *See Id.* Words and phrases in the ordinance must be given their plain meaning and effect and, if the language is clear, certain and unambiguous, our only function is to declare the meaning of the ordinance as expressed. *Appeal of AT & T Information Systems,* 405 N.W.2d 24, 27 (S.D.1987).

[¶ 9.] ETJ Planning Ordinance § 4.10.1 provides:

> A planned residential development, occupying three (3) acres or more shall be permitted in any A–1, PF or SRD District by special permit.

> The regulations established in this section are intended to provide optional methods of land development which encourage more imaginative solutions to environmental design problems, such as cluster planning. Residential areas thus established would be characterized by a unified building and site development program, open space for recreation, and the provision for commercial, religious, educational and cultural facilities which are integrated with the treatment. *In order to accomplish these objectives the customary district regulations may be modified, provided that overall population densities do not exceed the densities of specific residential districts.* (Emphasis added).

[¶ 10.] Landmark and Spring Creek argue the emphasized language is unambiguous and a plain reading of the ordinance allows modification of the population density of A–1, general agriculture property to accommodate a PUD. In their brief on appeal, Petitioners argued that the emphasized language is ambiguous. However, in oral argu-ment before this Court, Petitioners switched positions and suggested that the ordinance was unambiguous and a "plain reading" of the ordinance limits the population density of a PUD constructed on A–1, general agriculture property to one dwelling per forty acres.

[¶ 11.] Our review of ETJ Planning Ordinance § 4.10.1 indicates the ordinance is ambiguous as to the meaning of "residential districts." "Residential districts" is not defined in § 4.10.1. The term is not applied to A–1 general agriculture property anywhere in the comprehensive zoning plan other than the disputed final sentence of § 4.10.1. The only other reference to "residential districts" in the ETJ Planning Ordinances is in § 3.1.5(A) to describe suburban residential, rural residential and park-forest residential property. This reference does not pertain to or reference A–1, general agriculture property.

[¶ 12.] A plain reading of the term "residential districts" results in more than one reasonable definition and leads to more than one interpretation of ETJ Ordinance § 4.10.1. The ordinance's language indicates that the customary district regulations may be waived for a proposed PUD but overall population density requirements may not.[3] The ordinance does not make clear whether the population density for a proposed PUD is to be measured by the density governing the three districts which specifically allow PUDs (A–1, general agriculture, park forest, or suburban residential) or the three zoning districts specifically referred to as residential districts (suburban residential, rural residential, or park-forest residential) in other zoning ordinances. Absent an indication of *which* population density applies to a proposed PUD, the appropriate population density ranges from one dwelling per 7,500 square feet in suburban residential districts to one dwelling per forty acres in A–1, general agriculture districts, depending on the understanding of the disputed ordinance. This wide range of possible population densities

---

**3.** Customary district regulations concern requirements for such things as sidewalks and allowable space between residences.

allowed by the ordinance's language results in an ambiguity. Any argument that the ordinance is not ambiguous belies the reality that the plain language of the ordinance results in more than one reasonable understanding of the PUD requirements. The trial court's conclusion ETJ Ordinance § 4.10.1 was ambiguous as a matter of law was proper.

[¶ 13.] Having determined the ordinance to be ambiguous, we must now determine the proper construction to be given to it. When a term is not defined, it must be construed according to its accepted usage, and a strained, unpractical or absurd result is to be avoided. *Nelson v. South Dakota State Bd. of Dentistry,* 464 N.W.2d 621, 624 (S.D.1991). The intent of the zoning regulations must be ascertained and considered when construing an ordinance. *See Save Centennial Valley Ass'n, Inc.,* 284 N.W.2d at 457. "The purpose of the zoning districts is to be gathered from the whole act, and where a word or term is susceptible to two constructions, a meaning must be ascribed which carries out the purpose of the act." *Id.* (citing *Western Surety Co. v. Mydland,* 85 S.D. 172, 179 N.W.2d 3, (1970)). Additionally, exceptions to general provisions of an ordinance must be strictly, but reasonably construed. *See Olsen v. City of Spearfish,* 288 N.W.2d 497, 500 (S.D.1980). Exceptions extend only as far as their language fairly allows, with all doubts being resolved in favor of the general provision. *Id.* (citing *Lien v. Rowe,* 77 S.D. 422, 426, 92 N.W.2d 922, 924 (1958)).

[¶ 14.] We agree with the trial court's construction of ETJ Planning Ordinance § 4.10.1 that a PUD is subject to the population density limitations applicable to the district in which it is proposed. PUDs are allowed by special permit in three districts: A–1, park forest and suburban residential districts. Though the ordinance authorizing PUDs refers to "residential districts" as the basis for determining population density, PUDs are not allowed in all residential districts. A logical reading of the ordinance suggests that the population density limitations apply to those specific districts in which PUDs are allowed. The population density for a PUD is determined based on whether the PUD is proposed in an A–1, park forest or suburban residential district and limited to the population density for that specific district. Accordingly, Landmark's proposed PUD is limited to a population density of one dwelling per forty acres because of the property's status as A–1, general agriculture.

[¶ 15.] This interpretation is consistent with the purpose of the zoning regulations. In adopting the comprehensive zoning regulations, the local governments clearly intended to provide for a variety of development by establishing districts, with each district serving a different purpose in the overall planning scheme. For instance, A–1, general agriculture districts were established to "provide a district that will: (1) allow suitable areas of Lawrence County to be retained in agriculture uses, (2) prevent scattered non-farm development, and (3) secure economy in governmental expenditures for public services, utilities and schools." ETJ Planning Ordinance § 3.1.1. Similarly, park forest districts were established to "provide the County with an area to be preserved for its natural beauty, resources and open character." ETJ Planning Ordinance § 3.2.1. Consistent with these objectives, limitations on the population density in the various districts were established to ensure the use of the districts for their designated purposes.

[¶ 16.] PUDs were established as an alternative method of development and are intended to encourage imaginative solutions for development problems, not to abolish population density limitations. They are an exception to the general zoning provisions because of their potential incompatibility with existing development. Modifications of customary district regulations may be made to accommodate PUDs, but overall population densities may not be modified to accommodate the development. ETJ Planning Ordinance § 4.10.1. This limitation on the scope

of modifications which may be made to accommodate PUDs is consistent with the general provisions of the zoning regulations which divide districts based on population and use. *See, e.g.,* ETJ Planning Ordinance § 3.1.5. Beyond the specific exception for modifications of customary district regulations, PUDs are subject to the general provisions of the zoning ordinances, including the requirements for rezoning districts to adjust population density, to minimize the potential for incompatibility with existing developments. *See Olsen,* 288 N.W.2d at 499.

[¶ 17.] Our interpretation is further supported by the fact that without population density limitations for PUDs in A–1, general agriculture districts, general agriculture districts would effectively be abolished. By removing the population density requirements for agriculture districts, the very nature and customary uses of the districts become unpractical. The exception allowing for PUDs was not intended to abandon A–1, general agriculture districts, as evidenced by the zoning regulations specific recognition of the necessity of agriculture districts in the overall development and planning for the City and County. Our interpretation of ETJ Planning Ordinance § 4.10.1 is consistent with the zoning purposes of both A–1, general agriculture districts and PUDs without sacrificing the purpose of one district at the expense of the other.

[¶ 18.] Despite the population density limitations currently affecting the proposed PUD in this case, Landmark and Spring Creek are not without a remedy. The disputed property may be rezoned as a residential district compatible with the population density necessary to support the PUD.[4] While Landmark's

argument that the PUD ordinances were enacted to eliminate the necessity of rezoning for projects such as the Spring Creek development is logical, the ordinances which have been enacted do not evidence such an intent or achieve such a result. In their current form, the zoning regulations limit the population density for PUDs to the population density of the particular district in which the development is proposed. If City and County intended the PUD ordinances to replace the necessity of rezoning to higher population density districts in cases such as the Spring Creek development, we respectfully suggest the zoning ordinances be amended to so indicate.

[¶ 19.] Based on our conclusion that ETJ Planning Ordinance § 4.10.1 is ambiguous and our subsequent construction of the ordinance, we conclude Commission, City and County exceeded their authority and jurisdiction by approving the proposed PUD.

[¶ 20.] Affirmed.

[¶ 21.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

---

4. Landmark and Spring Creek have experience with the appropriate steps to follow. The PUD was originally proposed as a "subdivision" and the developers sought a zoning change from A–1 (general agricultural district) to R–R (rural residential district). This proposed zoning change was rejected on March 15, 1995, at the Lawrence County Commissioners and Lawrence County Planning & Zoning Joint Meeting. The developers next sought a change in zoning from A–1 to S–R (suburban residential). This change was denied May 17, 1995. Although not part of the appeal record, Appellees' Brief at pp. 3–4 n.2 points out that the developers again tried, unsuccessfully, to change the zoning to Suburban Residential in September, 1996, and to Park Forest in December, 1996. According to Appellees, City approved the proposals but County refused to do so.