2003 SD 101

**In the Matter of the Petition for WRIT OF CERTIORARI AS TO the WRONGFUL PAYMENTS OF ATTORNEY FEES MADE BY the BROOKINGS SCHOOL DISTRICT SCHOOL BOARD without legal authority.**

**No. 22496.**

Supreme Court of South Dakota.

Considered on Briefs April 28, 2003.

Decided Aug. 13, 2003.

Thomas H. Harmon of Tieszen Law Office, Pierre, SD, for appellant School Board.

Ellie M. Vandenberg, Volga, SD, for appellee Taxpayers.

ZINTER, Justice.

[¶ 1.] Craig Culver, Leon Pesall, Marcia Williams, Henry Williams, Robert Thorson, Hugh Barnett, Robert Schwartz and Diane Culver (Taxpayers) obtained a writ of certiorari setting aside a Brookings School Board (Board) payment of legal fees. The Board had reimbursed two private citizens for the legal fees they incurred in their private legal action to overturn a decision of a school election recount board. The circuit court granted the writ, concluding that the Board's reimbursement of private attorney fees was in excess of its authority. We hold that, under the specific facts of this case, the Board was not authorized to reimburse the private legal fees. However, we reverse that part of the order that, in a certiorari proceeding, ordered the affirmative relief of requiring the Board to commence a legal action to recover the payment. We also reverse the circuit court's award of Taxpayers' attorney fees at trial because the Taxpayers' application was not itemized. We grant Taxpayers' itemized request for appellate attorney fees.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] In 2001, the Board adopted a budget increase, which required that it "opt-out" of a statutory limitation on spending. *See* SDCL 10–13–36.[1] The Board's decision to opt-out of the spending limitation was subsequently referred to a public vote. Although the public initially voted to uphold the Board's decision to opt-out of the spending limitation, a number of voters filed a petition for a recount. During the recount, it was discovered that 77 absentee ballots had not been properly "stamped," and the school recount board invalidated those unstamped ballots. The invalidation of those ballots overturned the original election result and disallowed the Board's proposed spending increase.

[¶ 3.] However, two private citizens, Aelred Kurtenbach and Craig Johnson (hereinafter referred to as Kurtenbach, Johnson, or private citizens) challenged the recount board's decision by filing an election contest and a petition for writ of certiorari. Kurtenbach and Johnson alleged that the recount board had been

1. SDCL 10–13–36 provides:

    The governing body of a taxing district may exceed the limit pursuant to § 10–13–35 through the imposition of an excess tax levy. The governing body of a taxing district may impose an excess tax levy with an affirmative two-thirds vote of the governing body on or before July fifteenth of the year prior to the year the taxes are payable. On any excess tax levy approved after July 1, 2002, the governing body of the taxing district shall specify in the resolution the year or number of years excess tax levy will be applied.

    The requirements for an announcement made pursuant to this section are as follows:

    (1) The decision of the governing body to originally impose or subsequently increase an excess tax levy shall be published within ten days of the decision;

    (2) Publication shall be made at least twice in the legal newspaper designated by the governing body pursuant to law, with no fewer than five days between publication dates, before the opt out takes effect;

    (3) The announcement shall be at least three newspaper columns in width and four inches in length or at least one-sixth of a page in size, whichever size is greater;

    (4) The announcement shall be headed with the following statement in a typeface no less than eighteen point type: "ATTENTION TAXPAYERS: NOTICE OF PROPERTY TAX INCREASE OF $(fill in amount)." The remainder of the announcement shall consist of a reproduction of the "Resolution for Opt Out," including the amount that property taxes will be increased annually by the proposed opt out and a statement of the right to refer the decision of the board to a vote of the people as provided in this section. The secretary of revenue and regulation, in rules promulgated pursuant to chapter 1–26, shall prescribe a uniform form to be used by the taxing district for notification of taxpayers as required by this section.

    However, the requirements of subdivisions (3) and (4) shall be waived if:

    (A) The opt out is for less than fifteen thousand dollars; or

    (B) A copy of the resolution for opt out is mailed to every property taxpayer in the local governmental unit, by first class mail or bulk mail, within twenty days of the decision to opt out; and

    (C) A copy of the resolution for opt out is printed in each official newspaper in the local governmental unit's boundaries.

    For the purposes of subsections (A), (B), and (C), the first publication is not deemed to have occurred until three days after the mailing is sent or the resolution is delivered to the official newspaper.

    The opt out decision may be referred to a vote of the people upon a petition signed by at least five percent of the registered voters in the taxing district and filed with the respective governing body within twenty days of the first publication of the decision. The referendum election shall be held on or before October first preceding the year the taxes are payable. The taxing districts may not exceed the levy limits provided in chapter 10–12 except for the provisions in § 10–12–36.

illegally convened, and therefore, the recount board's decision was a nullity. That dispute eventually reached this Court, and we agreed that the recount board was illegally constituted. Consequently, the decision of the recount board was overturned. This would have reinstated the original election result and permitted the Board to opt-out of the spending limitation. *See In re* the Petition for Writ of Certiorari as to the Determination of Election on the Brookings School District's Decision to Raise Additional General Fund Property Tax Revenues in the Amount of $750,000, 2002 SD 85, 649 N.W.2d 581 (Brookings I).

[¶ 4.] This action for certiorari arose because, after the trial in *Brookings I*, the Board reimbursed the private citizens for the legal fees they incurred in overturning the decision of the recount board. The legal services were provided by Attorney Richard Helsper. Although Helsper was also the Board's attorney, he appeared in *Brookings I* as counsel of record for the private citizens. This dispute arose because the Board subsequently voted to pay for the private citizens' legal fees.

[¶ 5.] The facts relating to the legal services are undisputed. It appears from the record that the day after the recount, Helsper began researching the possibility of commencing an election contest and a certiorari proceeding. From the Friday following the recount until the following Tuesday when the private citizens' action was filed, Helsper spent substantial time on this matter. During that period of time, Kurtenbach's and Johnson's names appear in Helsper's billings, and the school superintendent "informed" the Board that the Board was going to pay the attorney fees incurred by Kurtenbach and Johnson.

However, the Board did not act to approve the superintendent's recommendation. Moreover, the record does not reflect that the Board agreed to participate in the litigation, employ Helsper to represent the Board's interests in the litigation, or authorize anyone else to assert the Board's interests. Consequently, the record reflects that Helsper appeared solely as counsel for Kurtenbach and Johnson in the *Brookings I* litigation.

[¶ 6.] However, after the *Brookings I* proceedings concluded in circuit court, the Board voted to pay the private citizens' legal fees. At Board meetings in December of 2001 and January of 2002, the Board voted to pay $12,169.78 for the private citizens' legal fees incurred in *Brookings I*.

[¶ 7.] Taxpayers subsequently filed this action for writ of certiorari seeking a review of the legality of the Board's decision to pay the fees. The circuit court concluded that the Board did not have the authority to pay Kurtenbach's and Johnson's private attorney fees. The circuit court also ordered the Board to take the affirmative act of suing Kurtenbach and Johnson to recover the expenditure. The Board appeals raising numerous questions that we have consolidated into the first 3 issues.[2] Taxpayers raise issue 4.

1. **Whether the trial court erred in concluding that the Board had no express or implied authority to pay the legal fees of these private citizens.**

2. **Whether the trial court, in an action for certiorari, had jurisdiction to order the affirmative relief of requiring the Board to commence a suit to recover the payment.**

---

2. We have rephrased the Board's issues. To the extent that some of their technical arguments are omitted from this opinion, we find those arguments either without merit or not affecting the outcome of this appeal.

3. Whether the trial court erred in awarding trial attorney fees that were not itemized.

4. Whether Taxpayers are entitled to their itemized attorney fee request in this appeal.

[¶ 8.] On Issue 1, we conclude that a school board has authority to pay legal fees to protect its interests in litigation. However, this Board exceeded its authority when it paid the legal fees of private citizens incurred in litigation in which the Board was not a party, did not employ counsel, and did not elect to appear or assert its interests. On Issue 2, we reverse that portion of the order that required affirmative relief as a remedy in an action for certiorari. On Issue 3, we reverse the Taxpayers' award of non-itemized attorney fees. On issue 4, we grant Taxpayers' itemized request for appellate attorney's fees.

## SCOPE AND STANDARD OF REVIEW

[¶ 9.] In certiorari proceedings, the initial scope of review is limited to determining whether the inferior courts, officers, boards or tribunals had jurisdiction to take the action under review, and whether they properly utilized their authority. Our scope of review is also limited:

> Because this matter was presented to the trial court on certiorari, our scope of review is limited to the questions of whether the inferior courts, officers, boards, and tribunals had jurisdiction and whether they have regularly pursued the authority conferred upon them. "When such courts, officers, boards, or tribunals have jurisdiction over the subject matter and of the party, their action will be sustained unless in their proceedings they did some act forbidden by law

or neglected to do some act required by law."

*Peters v. Spearfish ETJ Planning Comm'n,* 1997 SD 105, ¶ 6, 567 N.W.2d 880, 883 (internal citations omitted). Moreover, because the facts in this case are essentially undisputed, we are left with questions of law. We review questions of law de novo. *Hamerly v. City of Lennox Bd. of Adjustment,* 1998 SD 43, ¶ 10, 578 N.W.2d 566, 568.

## DECISION

1. The Board was not authorized to pay these private citizens' legal fees.

[¶ 10.] The dispositive question is whether the Board had authority to pay a private citizen's legal fees in an action where the Board was not a party, and it did not elect to assert an interest, employ counsel, or participate in the litigation. In considering that question, we start by noting that school boards are creatures of statute with limited powers. Therefore, a school board cannot exercise power unless it is expressly granted or necessarily implied by statute. *Haas v. Independent Sch. Dist. No. 1 of Yankton,* 69 S.D. 303, 306, 9 N.W.2d 707, 708 (1943). Although public bodies may exercise implied powers that are necessarily implied from statute, the implication

> ... should be clear and undoubted, and the party claiming through [it] should be able to point [it] out with certainty and precision.... Mere general arguments drawn from the convenience of possessing a power under certain circumstances in case of emergency—conclusions that, if possessed, it might be beneficially exercised, are very dangerous sources of corporate authority.... Implications spring from the necessities of some power actually conferred, and not from notions of what would be convenient or

expedient under particular circumstances.

*State ex rel. Bell v. Board of County Comm'rs of Beadle County,* 68 S.D. 237, 241–242, 300 N.W. 832, 834 (1941) (internal citations omitted).[3]

[¶ 11.] Here, the Board relies on two statutes as authority for its decision. The Board first notes that SDCL 13–5–1 grants school boards the power to "sue and be sued." SDCL 13–5–1 provides:

> Any territory organized for the express purpose of operating not less than a thirteen-year school program and governed by an elected school board is defined to be a school district. *It may sue and be sued,* contract and be contracted with, purchase, hold, and use personal and real property for school purposes, and sell and dispose of the same.

*Id.* (emphasis added). The Board also notes that SDCL 13–8–39 [4] grants school boards the power to "employ any necessary personnel" for the operation of the schools, which it contends should include attorneys.

[¶ 12.] We agree that these statutes provide general authority to employ counsel and expend funds for litigation involving a school board or litigation in which a school board may have an interest. We do not, however, believe they give a school board express or implied authority to gratuitously, after-the-fact, pay legal fees incurred by a private litigant when the Board was not a party or participant in the action, the Board had not employed the attorney to appear and represent the Board's interests, and the Board had not authorized the litigants to represent the Board's interests.

[¶ 13.] The statutory language compels this conclusion. Although SDCL 13–5–1 provides that a school board may "sue and be sued," this Board did not sue, nor was it sued in *Brookings I.* Moreover, the Board did not appear or participate as an intervenor or *amicus curiae.* Although the Board now claims that it possessed standing [5] and therefore "could have" pursued the writ of certiorari in *Brookings I,* the Board did not in fact assert that claim of standing and appear in any capacity in the *Brookings I* litigation. Under those circumstances, the power *to sue* and *be sued* under SDCL 13–5–1 does not include the authority to reimburse a private citizen's legal bills simply because some hypothetical claim of standing "may have" existed and the Board "could have" filed a lawsuit.

[¶ 14.] So also, although SDCL 13–8–39 authorizes a school board to *employ* necessary personnel (which includes counsel),

---

3. A board of education is the type of subordinate governmental agency that is subject to statutory limitations on its power and authority. *Sunnywood Common Sch. Dist. No. 46 of Minnehaha County v. County Bd. of Educ. of Minnehaha County,* 81 S.D. 110, 118, 131 N.W.2d 105, 110 (S.D.1964).

4. SDCL 13–8–39 provides:
   As provided and limited by law, the school board has general charge, direction and management of the schools of the district and control and care of all property belonging to it. The school board may levy taxes, borrow money, employ any necessary personnel, lease real and personal property, carry liability and other insurance, or in lieu of insurance, make other arrangements, including entering into agreements with others, which agreements may create separate legal or administrative entities pursuant to chapter 1–24, to protect and assist the school board in meeting obligations arising from such acts or omissions for which the school board may be legally liable, purchase all necessary books and equipment, purchase real property and erect necessary buildings for the operation of such schools.

5. *See generally Agar Sch. Dist. # 58–1 Bd. of Educ., Agar, SD v. McGee,* 527 N.W.2d 282 (SD 1995).

this Board does not claim that it actually *employed* Helsper for the *Brookings I* litigation. Indeed, the record reflects that Helsper appeared solely for Kurtenbach and Johnson, and the Board's only vote on the issue was to gratuitously reimburse those private citizens for their legal fees after the trial was concluded. Thus, absent some *employment* of counsel, SDCL 13–8–39 provides no express or implied authority to pay a private citizen's legal fees.[6]

[¶ 15.] We emphasize that our opinion today does not affect a school board's general authority to hire an attorney or pay legal fees to assert a board interest in litigation, including litigation involving an opt-out of the spending limitation. While not binding on this Court, it is interesting to note that on two occasions the South Dakota Attorney General has opined that school districts may employ attorneys and pay legal fees with school district funds in contested election matters. *See* 1951 OpAtt'yGen 239 (employment of attorney to contest petition for formation of a school district) and 1965 OpAtt'yGen 75 (employment of attorney to prohibit the holding of a reorganization election). However, in both cases, the attorneys were working for the school boards rather than for private litigants.

Therefore, while there are situations in which a school board may use school district funds to pay legal fees, those situations do not include cases where the board is not participating as a litigant, has not employed an attorney to represent its interests in the litigation, or has not authorized any other person to assert its interests. We simply hold that, under the facts of this case, the Board had no authority to gratuitously, after-the-fact, reimburse private litigants for their private legal expenses at the conclusion of litigation in which the Board never appeared or agreed to assert a Board interest.

[¶ 16.] The Board also asserts a procedural defense to the certiorari action. The Board argues that a writ of certiorari "does not lie to correct errors of law, but rather brings for review only the record of proceedings before the board." The Board asserts that it acted within its statutory authority, and therefore, this Court should not review whether the Board complied with the technical aspects of the law. The Board cites three cases for this argument: *Austin v. Eddy*, 41 S.D. 640, 172 N.W. 517 (1919); *State ex rel Woodcock v. Chitty*, 40 S.D. 164, 166 N.W. 633 (1918); and *State ex rel Johnson v. PUC*, 381 N.W.2d 226 (S.D.1986). However, these

---

**6.** The Board also argues that even though the initial decision to pay Helsper's fees was made by the superintendent without action by the Board, the employment decision was "ratified" by the Board when it subsequently voted to pay the private citizens' fees at two school board meetings. However, ratification of a contract presupposes that the Board had the authority to make the contract in the first place. As we noted in *Stroh v. Town of Java*, 463 N.W.2d 923, 925 (S.D.1990), a governmental subdivision cannot indirectly ratify a contract if the governmental subdivision did not have the authority to make the contract directly. So also, in *Stockwell v. City of Sioux Falls*, 68 S.D. 157, 159, 299 N.W. 453, 454 (1941), we noted that a governmental subdivi-

sion may authorize by ratification, but only where the underlying act is within the general corporate powers of the governmental subdivision. Here, the Board never elected to assert its interest in *Brookings I* and therefore, it had no underlying authority to employ Helsper to represent the *private interests of citizens* in that litigation. Moreover, the minutes of official board action do not reflect Board ratification of a decision to *employ counsel*. Rather, the Board minutes simply reflect a Board decision to pay the private citizen's legal fees together with all of the regular bills submitted for consideration at those meetings. Therefore the Board's ratification argument fails.

cases are inapplicable because even though the scope of review is limited under certiorari, this case involves a situation where the Board exceeded its statutory authority. Therefore, certiorari was an appropriate remedy.

[¶ 17.] The Board next argues that the reimbursement was authorized by our decision in *Agar Sch. Dist.*, 527 N.W.2d at 288–89. However, *Agar* did not address a school board's express or implied statutory authority to reimburse a private litigant's legal fees. The pertinent language of *Agar* only addressed claims of maintenance and champerty in a taxpayer's suit that was initiated by a school board. In that context, we merely held that the defenses of maintenance and champerty did not bar a good-faith suit by taxpayers even if initiated by a school. We did not, however, address the propriety of gratuitous, after-the-fact financing of litigation in which the Board never employed counsel or asserted an interest.

■ [¶ 18.] The Board finally argues that the circuit court did not sign or file an actual writ of certiorari, but instead only "granted" the writ in a memorandum opinion. We conclude that this procedural omission does not warrant a reversal.

[¶ 19.] SDCL 21–31–3 and 21–31–6 [7] provide that a writ must be directed to and served upon the inferior board. After the original writ is issued, the inferior tribunal must generally be given an opportunity to file a return, and after the parties have been heard, the judge may issue a judgment on the merits. SDCL 21–31–7. [8]

[¶ 20.] In this case, it appears that the initial writ was not served upon the Board, and a formal return was not filed. However, it also appears that there were communications between the court and counsel concerning the timing of these procedural requirements in light of the fact that the Board had filed a motion to dismiss. Ultimately, both parties were given an opportunity to fully brief and present the merits of their case in the course of the circuit court's consideration of the motion to dismiss. In fact, the stipulation of facts from the underlying election case was utilized. Therefore, even though the initial writ was not issued or served, and although the Board did not file a return, the court's decision on the motion to dismiss addressed the substantive issues that are now involved in this appeal. We therefore find no prejudicial error as a result of the procedural omissions.

2. **The trial court had no jurisdiction, in a certiorari proceeding, to affirmatively order a governmental entity to take legal action to recover funds expended without authority.**

■ [¶ 21.] The Board argues that the trial court exceeded the proper scope of remedies available under certiorari when the court ordered the Board to take legal action against Kurtenbach and Johnson to

---

7. SDCL 21–31–3 provides:

   The writ of certiorari may be directed to the inferior court, tribunal, board, or officer, or to any other person having the custody of the records or proceedings to be certified. SDCL 21–31–6 provides:

   The writ of certiorari must be served in the same manner as a summons in a civil action, except when otherwise expressly directed by the court.

8. SDCL 21–31–7 provides:

   If the return of the writ of certiorari be defective the court may order a further return to be made. When a full return has been made the court must hear the parties, or such of them as may attend for that purpose, and may thereupon, give judgment either affirming or annulling or modifying the proceedings below.

recover the attorney fees. The order provided:

IT IS FURTHER ORDERED the School Board take whatever actions necessary to recover the funds illegally given to Mr. Kurtenbach and Mr. Johnson. This would include if necessary, legal proceedings against those individuals. Such action to commence within thirty (30) days from the date of this writ.

[¶ 22.] As noted previously, certiorari only allows a court to address whether the inferior board, court, officer or tribunal exceeded its jurisdiction. SDCL 21–31–1. Moreover, *Hamerly v. City of Lennox Board of Adjustment*, 1998 SD 43, 578 N.W.2d 566, determined that generally, the remedies under certiorari do not include the power to order affirmative acts. In *Hamerly*, citizens of Lennox petitioned for a writ of certiorari after the city's Board of Adjustment decided that the rebuilding of a burned structure did not violate the city's zoning ordinance. The circuit court not only determined that the Board of Adjustment erred, but also affirmatively ordered the removal of the building. On appeal, we affirmed the trial court's issuance of a writ, but reversed the circuit court's affirmative order to remove the building. We held that in certiorari "the circuit court should have limited its judgment to a reversal of the Board's final decision as illegal and in excess of its jurisdiction." *Id.* at ¶ 14. That ruling was consistent with the statutory limitation on

remedies in certiorari to "either affirming or annulling or modifying the proceedings below." SDCL 21–31–7.

[¶ 23.] Consequently, we agree that the circuit court's order to sue exceeded the scope of the remedies available under certiorari. We reverse that part of the circuit court's order that affirmatively ordered the Board to initiate a legal action within thirty days against Kurtenbach and Johnson for recovery of the fees.

3. **The trial court erred in awarding attorney's fees that were not itemized.**

[¶ 24.] The Board argues that the circuit court erred in granting the Taxpayers' request for their attorney's fees incurred in the proceedings below. In ruling on a request for attorney's fees, the trial court must enter findings of fact and conclusions of law, supporting its decision. *Hoffman v. Olsen*, 2003 SD 26, ¶ 10, 658 N.W.2d 790, 792 (further citations omitted). Moreover, although attorney's fees are allowed in taxpayer actions under SDCL 15–17–45 and 15–17–46,[9] these Taxpayers did not present evidence or an itemized statement supporting their claim. The record only reflects that the Taxpayers submitted a non-itemized request for $4991.25 in fees. In her brief, counsel for the Taxpayers asserts that "[t]his attorney's word should be good enough." However, as we recently reiterated in

---

9. SDCL 15–17–45 provides:

A circuit court, in the event of a recovery by plaintiff, may award a reasonable sum to reimburse the plaintiff for expenses, including attorneys' fees, in an action brought by a taxpayer on behalf of himself and other taxpayers similarly situated, to recover into the treasury of the state, school district, city, county or other government entity, funds wrongfully expended, misappropriated or misapplied by a governing body or public official.

SDCL 15–17–46 provides:

The plaintiff in an action referred to in § 15–17–45 shall acquire a lien for the amount awarded by the court against any judgment that may be recovered in the action. Satisfaction of the lien shall be made from the proceeds collected on the judgment and may not be claimed against the governmental entity.

*Hoffman,* entitlement to attorney's fees requires documentation in support of that request. *Id.* at ¶ 11. Because the Taxpayers failed to present documentation or an itemization to support their request, appellate review is precluded, and we reverse the award of fees incurred at trial.

### 4. Taxpayers are entitled to itemized appellate attorney's fees.

[¶ 25.] Taxpayers have moved for appellate attorney's fees. SDCL 15–26A–87.3 permits an award of appellate attorney's fees if they are otherwise allowable and if they are accompanied by a verified, itemized statement of the legal services rendered. Taxpayers' appellate request contains a sworn statement of the hours spent briefing this appeal. Moreover, the request is authorized under SDCL 15–17–45 and 15–17–46. Those statutes allow the recovery of attorney's fees in the event of a recovery of an improper expenditure. However, those statutes also require that the fees must be recovered from the proceeds collected. Therefore, we grant the Taxpayers' fee request of $2,369.60 to be collected from the proceeds should there be a recovery as a result of this action.

[¶ 26.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, concur.

[¶ 27.] SABERS and KONENKAMP, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 28.] I would reverse Issues 1, 2 and 3 and not reach Issue 4 because the taxpayers would not be the successful party.

[¶ 29.] Issue 1 is key to the case and where the majority opinion misses the mark.

[¶ 30.] SDCL 13–5–1 provides:

Any territory organized for the express purpose of operating not less than a thirteen-year school program and governed by an elected school board is defined to be a school district. *It may sue and be sued, contract and be contracted with,* purchase, hold, and use personal and real property for school purposes, and sell and dispose of the same.

(emphasis supplied).

[¶ 31.] SDCL 13–8–39 provides in part:

[T]he school board has general charge, direction and management of the schools of the district and control and care of all property belonging to it. The school board may levy taxes, borrow money, *employ any necessary personnel,* lease real and personal property, ... purchase all necessary books and equipment, purchase real property and erect necessary buildings for the operation of such schools.

(emphasis supplied).

[¶ 32.] The majority opinion attempts to convince us that despite *all* these direct and express powers, the School Board does not have the express or implied power to defend its decision to opt out of spending limitations or did not cause Kurtenbach and Johnson to bring this election contest for the School Board. Nonsense.

[¶ 33.] SDCL 12–22–3 may have caused the parties and the trial court to believe that the School Board could not bring an election contest because the statute provides in part that: "[s]uch contest may be instituted by *any registered voter* who was entitled to vote on a referred or submitted question[.]" A more accurate reading makes it obvious that any member of the School Board who was a registered voter could have brought such action.

[¶ 34.] In fact, that is very close to what actually happened. The Superintendent contacted the School Board's attorney, Richard Helsper, who began working

on the question. After a review of SDCL 12–22–3 and conversations with the Superintendent, Attorney Helsper became counsel for Kurtenbach and Johnson to initiate the election contest for the School Board. Any one of the School Board members could have done the same and the School Board could have paid the School Board's attorney to represent them. It clearly appears that Attorney Helsper was the School Board's agent in causing Kurtenbach and Johnson to bring the election contest for the School Board.

[¶ 35.] In my view, SDCL 13–5–1 empowers the School Board *"to sue and be sued,* contract and be contracted with," and SDCL 13–8–39 permits them to *"employ any necessary people."* The School Board may do so expressly and directly, or as here, impliedly and indirectly.

[¶ 36.] The School Board is the elected representative of residents of the School District and has an obligation to defend its decision to opt out of spending limitations and can "employ any necessary personnel" to do so. *See* SDCL 13–8–39.

[¶ 37.] We should reverse on Issue 1 because the payment or ratification of attorney fees to Attorney Helsper was legal, even though indirect. We should also reverse Issues 2 and 3, in part for the reasons stated in the majority opinion. Finally, we need not reach Issue 4 because the taxpayers would not be the successful party.

[¶ 38.] KONENKAMP, Justice, joins this dissent.