#24015-a-CALDWELL, Circuit Judge
**2007 SD 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

LAMAR OUTDOOR ADVERTISING
OF SOUTH DAKOTA, INC., Petitioner and Appellant,

  v.

CITY OF RAPID CITY, a municipality,
THE RAPID CITY COUNCIL and TOM JOHNSON,
MIKE SCHUMACHER, SAM KOOIKER, DEB
HADCOCK, KAREN GUNDERSON OLSON, BILL
OKREPKIE, RAY HADLEY, RON KROEGER,
MALCOM CHAPMAN, and BOB HURLBUT, in
their capacity as members of the Rapid
City Council and BRAD SOLON, in his
official capacity as Building Official
for the CITY OF RAPID CITY, Respondents and Appellees,
  and
EPIC OUTDOOR ADVERTISING, LLP, Intervenor and Appellee.

* * * *
APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA
* * * *
HONORABLE A. PETER FULLER
Judge

* * * *

ROBERT L. MORRIS of
Day, Morris Law Firm     Attorneys for petitioner
Belle Fourche, South Dakota    and appellant.

JOEL P. LANDEEN
City Attorney's Office      Attorneys for respondent
Rapid City, South Dakota     and appellee.

MICHAEL P. REYNOLDS of
Barker and Reynolds      Attorneys for intervenor
Rapid City, South Dakota     and appellee.

* * * *

        CONSIDERED ON BRIEFS
        OCTOBER 4, 2006

        OPINION FILED 4/4/07

#24015

CALDWELL, Circuit Judge

[¶1.]        Lamar Outdoor Advertising of South Dakota, Inc. (Lamar) petitioned the circuit court for a writ of certiorari to annul the action taken by the Rapid City Common Council (City Council) and a writ of mandamus to compel City Building Official Brad Solon (Building Official) to issue a stop work order to Epic Outdoor Advertising (Epic).  The circuit court found the City Council had jurisdiction to hear the matter.  The circuit court ended its inquiry there, finding Lamar failed to make the required showing that the City Council acted fraudulently, arbitrarily or with willful disregard of undisputed or indisputable proof.  We affirm.

FACTS

[¶2.]        In 2002 the City Council made considerable revisions to Chapter 15.28 of the Rapid City Municipal Code (RCMC) in order to better regulate signs within Rapid City, South Dakota.  Chapter 15.28, referred to as the sign code, was a response to the City Council's findings that off premise signs adversely affect the scenic beauty of the city and that the previous regulations adopted by the city were inadequate to protect the scenic beauty of the Black Hills.  Preamble to RCMC § 15.28, Ord. 3813.

[¶3.]        From 2002 until 2004 few exemptions existed in the revised sign code. In 2004 the City Council broadened an exemption for signs constructed for a public purpose.  The original 2002 building permit exemption stated:

> The following types of signs and activities are exempt
> from the provisions 15.28.040(A) [sic][1]:
>                 * * *

---

1.     The ordinance should be 15.28.080(A), which is the Sign Building Permit
       section of the sign code.

10. Signs required or specifically authorized for a public purpose by any law, statute or ordinance; which may be of any type, number, area, height above grade, location, illumination, or animation, required by law, statute or ordinance under which the signs are erected. In no event, however, shall such sign or part thereof contain an advertising message.

RCMC § 15.28.080(B)(10), Ord. 3813. In 2004 it was changed to:

The following types of signs and activities are exempt from provisions 15.28.080(A):

\* \* \*

10. Signs required or specifically authorized for a public purpose, which may be of any type, number, area, height above grade, location, illumination, or animation.

RCMC § 15.28.080(B)(10), Ord. 4030.

[¶4.] In March 2005, relying on the public purpose exemption of the ordinance, Epic began construction of four electronic reader boards in four different locations, all in railroad right-of-ways in Rapid City. Epic did not obtain a permit before beginning construction. Shortly after construction began, the Building Official red tagged the signs and issued a stop work order because Epic had not obtained a sign permit.[2]

---

2. The letter sent to Epic from the Building Official provided:

Construction of a sign structure has commenced in the 1400 Block of West Main Street in Rapid City in the railroad right-of-way. City records reveal no permit for this construction. Signs erected without permits are considered unlawful (RCMC § 15.28.010), therefore the Building Official has determined that the signs shall be removed (RCMC § 15.28.030). Also, a conditional permit for an off-premises sign is required. City records also reveal that no conditional permit has been issued for this location.

[¶5.] On April 20, 2005, Epic appealed the Building Official's decision to the Sign Code Board of Appeals (Board), pursuant to RCMC § 15.28.270.[3] In its appeal, Epic argued that it did not need a sign building permit because it was utilizing the public purpose exemption of the sign code. After deliberations, the Board voted to continue Epic's appeal to May 18, 2005, so that notice of the hearing could be sent to all adjacent landowners. At the conclusion of the May hearing, the Board upheld the Building Official's decision that Epic did not fit within the public purpose exemption. Epic appealed the decision of the Board to the City Council on May 24, 2005.

[¶6.] Around that same time the City Council amended the sign building permit exemption that Epic was attempting to utilize. The new language of the exemption provided:

> The following types of signs and activities are exempt from the provisions 15.28.080(A):
> * * *
> 10. Signs for a public purpose, as declared by the City Council, which may be of any type, number, area, height above grade, location, illumination, or animation; provided that any request for such a declaration can only be made by a public body exercising governmental authority.

RCMC § 15.28.080(B), Ord. 5067. The City Council sought to change the exemption, in part, because the Council found it was in the best interest of the public to amend the language of the section for the purpose of clarifying both the language and the original intent of the Council and for insuring that all future uses

---

3.   RCMC § 15.28.270 provides that "[t]here is created a Sign Code Board of Appeals to hear and decide appeals and decisions made by the Building Official."

of this exemption would be approved by the Council. Preamble to Ord. 5067. The ordinance also contained a section that specifically stated that it would be retroactive and apply to all signs that are currently proposed or under construction. Ord. 5067. The ordinance was first read May 16, 2005, and became effective July 5, 2005.

[¶7.] Epic's appeal of the Board's decision was heard during a July 18, 2005, City Council meeting. Epic strenuously disputed the City Attorney's argument that only signs approved by a governing body or a body exercising governmental authority could use the public purpose exemption. Epic relied on the plain language of the ordinance effective at the time it began construction, which did not identify what body was required to specifically authorize signs for a public purpose. Epic also disputed the City Attorney's contention that the signs would not serve a public purpose, highlighting all of the civic and charitable organizations that would be allowed to use the signs at no cost. These groups included, but were not limited to, the Journey Museum, the Dahl Fine Arts Center, the Convention and Visitors Bureau and the Rapid City Area Hospitality Association.

[¶8.] After considering the arguments, the City Council voted 9-1 to overturn the decision of the Board and allow the signs to be finished under the public purpose exemption to the sign code as it existed when construction began.

[¶9.] On October 3, 2005, Lamar filed a petition for writ of certiorari challenging the jurisdiction of the City Council's decision to overturn the Board and a writ of mandamus seeking to compel the Building Official to reinstate the stop work order on all four of Epic's signs. On October 14, 2005, Epic filed a motion for

leave to intervene, which was granted after a hearing on the motion held October 28, 2005. The parties stipulated to the certified record of all proceedings that were presented to the Board and the City Council on November 15, 2005.

[¶10.]     On December 2, 2005, a hearing was held on Lamar's petitions for writ of certiorari and writ of mandamus. No additional evidence was offered at the hearing. The Honorable Judge A. P. Fuller issued a memorandum opinion denying Lamar's requests on December 21, 2005, relying on the certified record and the arguments of counsel. In his decision, Judge Fuller found that the City Council had jurisdiction to hear the appeal of the Board and that Lamar failed to show that the City Council exceeded its jurisdiction by acting fraudulently, arbitrarily or with willful disregard of undisputed or indisputable proof.

[¶11.]     Lamar filed a motion for reconsideration on December 27, 2005. On January 11, 2006, Judge Fuller signed the findings of fact and conclusions of law denying Lamar's petitions and their motion for reconsideration. Lamar filed its notice of appeal on February 17, 2006.

STANDARD OF REVIEW

[¶12.]     "In certiorari proceedings, the initial scope of review is limited to determining whether the inferior courts, officers, boards or tribunals had jurisdiction to take the action under review, and whether they properly utilized their authority." *In re* Writ of Certiorari as to Wrongful Payments of Attorney Fees Made by Brookings Sch. Dist. Sch. Bd., 2003 SD 101, ¶9, 668 NW2d 538, 542. Our review is also limited:

> Because this matter was presented to the trial court on certiorari, our scope of review is limited to the questions

of whether the inferior courts, officers, boards, and tribunals had jurisdiction and whether they have regularly pursued the authority conferred upon them. "When such courts, officers, boards, or tribunals have jurisdiction over the subject matter and of the party, their action will be sustained unless in their proceedings they did some act forbidden by law or neglected to do some act required by law."

*Id.* (quoting Peters v. Spearfish ETJ Planning Comm'n, 1997 SD 105, ¶6, 567 NW2d 880, 883). In addition, because the facts in this case are undisputed,[4] we are left with only questions of law. We review questions of law de novo. Hamerly v. City of Lennox Bd. of Adjustment, 1998 SD 43, ¶10, 578 NW2d 566, 568.

ISSUE

[¶13.] **Did the City Council have jurisdiction to consider Epic's appeal of the Board's interpretation of the city sign code?**

DECISION

[¶14.] Lamar filed a writ of certiorari, contending that the City Council exceeded its jurisdiction when it overturned the decision of the Board. SDCL 21-31-1 provides:

A writ of certiorari may be granted by the Supreme and circuit courts, when inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and there is no writ of error or appeal nor, in the judgment of the court, any other plain, speedy, and adequate remedy.

---

4. Lamar argues that the circuit court's findings of facts and conclusions of law were not appropriate in this case because no evidence outside of the certified record was taken. The facts in this matter are set forth in the certified record, which was agreed upon by all sides. That some facts are set out in a findings of fact format is irrelevant.

[¶15.] Chapter 15.28 of the RCMC regulates the construction of signs within the city. Section 15.28.270 of the sign code governs appeals. In relevant part, it states:

> 1. Any person aggrieved or [sic] by any officer, department, board or bureau of the city affected by any decision of the Building Official may appeal to the Common Council the decision of the Sign Code Board of Appeals.

RCMC § 15.28.270(I)(1).

[¶16.] In this case, Epic attempted to utilize the public purpose exemption in the sign code, which at that time exempted "signs required or specifically authorized for a public purpose[.]" RCMC § 15.28.080(B)(10), Ord. 4030. The Building Official placed a stop work order on the signs. The Board agreed with the Building Official's determination that the four signs did not fit the definition of the ordinance. Epic was affected or aggrieved by the Board's decision and appealed it to the City Council, asking the City Council to determine whether Epic fell within the express language of the exemption. Accordingly, the City Council's jurisdiction to hear the appeal was proper.

[¶17.] The circuit court stopped its review there. In doing so, it found that Lamar failed to produce any specific evidence that the City Council did not follow its own ordinances when it found that Epic's signs fit the definition of public purpose and allowed Epic's signs to remain in a railroad right-of-way. The circuit court relied on a series of cases in Cole v. Board of Adjustment of the City of Huron, in making its decision to stop the inquiry at this point. 1999 SD 54, 592 NW2d 175 (*Cole I*); 2000 SD 119, 616 NW2d 483 (*Cole II*).

[¶18.] As recognized by the Court in *Cole I*, South Dakota law is well established regarding a writ of certiorari. "[T]he only question presented on certiorari is whether the lower tribunal exceeded its jurisdiction." *Cole I*, 1999 SD 54, ¶10, 592 NW2d at 177 *(*citing *Hamerly*, 1998 SD 43, ¶14, 578 NW2d at 569 ("[T]he circuit court should . . . [limit] its judgment to a reversal of the Board's final decision as illegal and in excess of its jurisdiction."); Willard v. Civil Service Board of Sioux Falls, 75 SD 297, 298, 63 NW2d 801, 801 (1954) ("Review of circuit court proceedings on certiorari extends only to determination of whether board which circuit court reviewed acted without jurisdiction or in excess of jurisdiction; court will not review matters of evidence in absence of showing that board acted fraudulently or in arbitrary or willful disregard of undisputed and indisputable proof."); Kirby v. Circuit Court, McCook County, 10 SD 38, 40-41, 71 NW 140, 141 (1897) ("[T]he only questions to be considered in this court [on a writ of certiorari] are whether the court, upon the record before it, exceeded its jurisdiction, or whether that court has failed to regularly pursue the authority of such court.")).

[¶19.] The *Cole* cases are similar in both facts and procedure to the matter now before us. In *Cole*, Casey's General Stores sought a variance from the Board of Adjustment for the City of Huron to permit the construction of a gas station and convenience store in an area zoned residential. The Board of Adjustment granted the variance after finding that the land had been vacant for fifty years and was in a transition from a residential to a commercial area. An adjacent landowner filed a writ of certiorari with the circuit court, arguing that the Board's actions were not consistent with the zoning ordinances. The circuit court granted the petition

finding that the Board's decision did not comply with the City's zoning ordinance. The City appealed the decision.

[¶20.]		In *Cole I,* this Court found that the circuit court improperly reviewed the record de novo in making its determination that the Board did not comply with the ordinance.  1999 SD 54, ¶11, 592 NW2d at 177.  The case was remanded with direction for the circuit court to apply the correct standard of review.  *Id.*  In *Cole II*, this Court again reversed the circuit court, which found the variance had been granted illegally and in excess of the Board's jurisdiction because the Board "failed to make any finding 'that there exists special conditions which constitute an unreasonable deprivation of use.'"  2000 SD 119, ¶6, 616 NW2d at 485.  "Instead of reviewing whether the Board exceeded its jurisdiction in granting the variance, the circuit court tried the case on the merits, by analyzing [the] Huron City Ordinance . . . and concluding that there was no evidence supporting the Board's finding of a special condition to justify the variance."  *Id.* ¶11.

[¶21.]		This Court stated that the Board of Adjustments has "wide discretion in deciding whether or not to grant a variance to a zoning ordinance, and in reviewing that decision, the circuit court may not substitute its discretion for that of the Board."  *Id.* ¶17.  This limitation on scope of review prevents "courts from usurping policy decisions from other branches of government."  *Id.* (citation omitted). Courts must not review the merits of a petition or evidence for the purpose of determining the correctness of a finding, in the absence of a showing that the Board "acted fraudulently or in arbitrary or willful disregard of undisputed and

indisputable proof." *Cole I*, 1999 SD 54, ¶10, 592 NW2d at 177; *Willard*, 75 SD at 298, 63 NW2d at 801.

[¶22.]     Like in *Cole*, Lamar argues that the City Council exceeded its jurisdiction by failing to apply its own city ordinances.  The circuit court properly held that Lamar did not meet its burden of showing that the City Council, in making its decision to reverse the Board, acted fraudulently or in arbitrary or willful disregard of undisputed and indisputable proof.

[¶23.]     Lamar claims that the City Council exceeded its jurisdiction by reversing the Board because the signs lie in a railroad right-of-way.  To support its contention, Lamar points to RCMC § 15.28.080 of the sign code, which is entitled sign building permits.  RCMC § 15.28.080(A) provides that, except as otherwise provided, it is unlawful to "erect, construct, enlarge, move or convert any sign in the city, or cause the same to be done without first obtaining a sign building permit[.]" Section 15.28.080(B) describes signs and activities that are exempt from obtaining a sign code permit.  Because the exemption refers specifically to the sign building permit section of the sign code, Lamar argues that the public purpose exemption does not exempt anything other than the need for a permit.

[¶24.]     However, the plain language of the exemption goes further than simply exempting a permit.  RCMC § 15.28.080(B)(10) exempts, "signs required or specifically authorized for public purpose, *which may be of any type, number, area, height above grade, location, illumination, or animation.*" (Emphasis added).  The ordinance allows for signs authorized for public purpose to be constructed without a permit, but it also states that the sign may be of *any* type, area, height above grade,

*location,* illumination and animation of signs. The City Council did not exceed its jurisdiction by permitting the signs to be located in the railroad right-of-way.

[¶25.] Lamar also contends that the City Council exceeded its jurisdiction by failing to apply the recently passed retroactive public purpose exemption to Epic's signs. This Court has held that zoning laws may not be retroactively applied so as to deprive property owners of prior vested rights by preventing a use that was lawful before the enactment of zoning laws. City of Marion v. Rapp, 2002 SD 146, ¶6, 655 NW2d 88, 90. The City's sign code is similar in nature and the same rationale applies. The Building Official stopped construction of the signs. The City Council determined the signs fit within the public purpose exemption. To apply the new ordinance retroactively would divest Epic of its property rights in the signs that were legal when construction began. The City Council did not exceed its jurisdiction in failing to apply a law that is legally questionable.

[¶26.] The circuit court also held that Lamar failed to point to any specific evidence that the City Council, in making their determinations, acted arbitrarily or with willful disregard. We agree. "[C]ertiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding, at least in the absence of fraud, or willful and arbitrary disregard of undisputed and indisputable proof [.]" *Willard*, 75 SD at 298, 63 NW2d at 801. It was Lamar's burden to put forth evidence that the City Council's decision was made in some arbitrary fashion and it failed to do so. Because this came before the circuit court on a writ of certiorari, this Court's inquiry will end here. Accordingly, the decision of the lower court to deny the writ of certiorari and writ of mandamus is affirmed.

[¶27.]     GILBERTSON, Chief Justice, and SABERS and MEIERHENRY, Justices, concur.

[¶28.]     ZINTER, Justice, concurs specially.

[¶29.]     CALDWELL, Circuit Judge for KONENKAMP, Justice, disqualified.

ZINTER, Justice, (concurring specially).

[¶30.]     I concur and write to clarify when a retroactive application of zoning ordinances is impermissible.

[¶31.]     The Court states that zoning laws may not be applied retroactively to deprive property owners of prior vested rights by preventing a use that was lawful before the enactment.  *See supra* ¶25 (citing *City of Marion v. Rapp*, 2002 SD 146, ¶6, 655 NW2d 88, 90, for the proposition that zoning ordinances cannot be retroactively applied to deprive a person of vested rights).  This rule, although simply stated, is difficult to apply.  The difficulty arises in determining when a property owner acquires vested rights.  The Indiana Supreme Court set forth the elements of vested rights in a billboard case.

> As a general proposition, the courts have been willing to hold that the developer acquires a "vested right" such that a new ordinance does not apply retroactively if, but only if, the developer "(1) relying in good faith, (2) upon some act or omission of the government, (3) . . . has made substantial changes or otherwise committed himself to his substantial disadvantage prior to a zoning change."

Metro Dev. Comm'n of Marion County v. Pinnacle Media, L.L.C., 836 NE2d 422, 425-426 (Ind 2005) (citing John J. Delaney and Emily J. Vaias, *Recognizing Vested Development Rights as Protected Property in Fifth Amendment Due Process and Takings Claims*, 49 Wash U J Urb & Contemp L 27, 31-35 (1996)) (other citation

omitted), *aff'd and explained on reh'g*, Metro Dev. Comm'n of Marion County v. Pinnacle Media, L.L.C., 846 NE2d 654 (Ind 2006)). *See also*, 8 Patrick J. Rohan and Eric Damian Kelly, *Zoning and Land Use Controls*, ch 52D (discussing the concept of vested rights). The Indiana Supreme Court ultimately held that although construction of a structure was deemed sufficient to create vested rights, having a building permit on file did not necessarily create vested rights. *Metro Dev. I,* 836 NE2d at 428; *Metro Dev. II,* 846 NE2d at 656-657.

[¶32.]     In this case, the amended ordinance added a new requirement that only a public body could request the public purpose exemption. *See supra* ¶6. However, that new provision could not be applied retroactively because construction of Epic's signs started before the new ordinance was adopted. The law is well settled that construction generally meets the vested rights test. "Structures in the course of construction at the time of the enactment or the effective date of the zoning law are exempt from the restrictions of the [new] ordinance." *Metro Dev.*, 836 NE2d at 426.